LAUREL OIL & FERTILIZER CO. v. F. O. HORNE.

[57 South. 624 and 58 South. 652.]

1. BANKRUPTCY. *Preferences. Transfers. Necessity of Recording. Code 1906, Sec. 2787.*

Under Bankruptcy Act July 1, 1898, Ch. 541, Sec. 60a, 30 Stat. 562, U. S. Comp. St. 1901, page 3445, as amended by Act Feb. 5, 1903, Ch. 487, Sec. 13, 32 Stat. 799, U. S. Comp. St. Supp. 1909, page 1315, invalidating transfers made within four months, and providing, that, if by law a transfer is required to be recorded, the period of four months shall not expire until four months after recording; a deed of trust, made more than four months before the grantor filed a petition in bankruptcy, but recorded within four months, is not void since under Sec. 2787, Code of 1906, an unrecorded deed of trust is valid as between the parties thereto and as against creditors and hence is not such an instrument, within the meaning of the bankrupt law, as is required by the laws of this state, to be recorded.

ON SUGGESTION OF ERROR.

2. BANKRUPTCY. *Preference. Mortgage. Avoidance by Bankrupt.*

Even though Code of 1906, Sec. 2787 is a law by which recording a mortgage is "required" within Bankrupt Act, July 1, 1898, Ch. 541, Sec. 60a, 30 Stat. 562, U. S. Comp. St. 1901, page 3445, as amended by Act Feb. 5, 1903, Ch. 487, Sec. 13, 32 Stat. 799, U. S. Comp. St. Supp. 1911, page 1506, so that such mortgage though given more than four months before the filing of the petition in bankruptcy having been recorded within such period, may be avoided, notwithstanding there are only general creditors of the bankrupt; yet authority to avoid a preference, and recover the property, being given by section 60b, only to the trustee in bankruptcy, the bankrupt having made a composition settlement with his other creditors and been discharged without the mortgagee having proved his claim, or his mortgage being questioned, cannot, by reason of the bankrupt law, attack the mortgage and the sale thereunder.

3. SAME.

In such case if the mortgage was fraudulent and obtained at a time when the grantor was insolvent and for the purpose of

obtaining a preference, then he was equally at fault with the grantee, and a court of equity will refuse him any affirmative relief when he seeks to have the mortgage cancelled.

APPEAL from the chancery court of Newton county.
HON. SAM WHITMAN, JR., Chancellor.

Suit by F. O. Horne against the Laurel Oil & Fertilizer Company and others. From a judgment overruling a demurrer to the bill, defendants appeal.

On December 4, 1907, appellee executed and delivered to the Laurel Oil & Fertilizer Company a deed of trust covering certain land in Newton county to secure an indebtedness then past due, for which he then executed a note due March 1, 1908. This deed of trust was not filed for record until April 8, 1908. On April 23, 1908, the land embraced in this trust deed was advertised for sale by the trustee (W. L. Wilson); default in the payment of the note having been made. On April 30, 1908, the appellee filed a voluntary petition in bankruptcy, and on May 8, following was adjudicated a bankrupt, and a trustee was duly appointed to take charge of the bankrupt estate. Said trustee immediately obtained a temporary restraining order to prevent the trustee in the deed of trust from making a sale of said land. The Laurel Oil & Fertilizer Company filed a demurrer to the petition of the trustee, upon which the restraining order had been obtained; but no further steps seem ever to have been taken. The claim of the Laurel Oil & Fertilizer Company was scheduled in the bankrupt proceedings as a secured claim. The regular notices were published in bankruptcy proceedings, and after the expiration of one year the Laurel Oil & Fertilizer Company had not proven its claim against the bankrupt estate. Afterwards a composition with creditors was effected, and on the 4th day of November, 1909, the appellee received his discharge in bankruptcy. Thereafter on March 25, 1910, the trustee in the deed of trust (W. L.

Wilson) proceeded to sell the land under the deed of trust, and same was purchased by K. C. Hall.

Thereafter on June 18, 1910, Horne filed his bill in the chancery court against the Laurel Oil & Fertilizer Company, Hall, and Wilson, setting out the foregoing facts, and alleging that at the time the deed of trust was executed appellee was insolvent, and this fact was known to the Laurel Oil & Fertilizer Company, who had requested the execution of the note and deed of trust, which was procured in order to secure a preference over other creditors of appellee; that such deed of trust was invalid, since it was not filed for record four months before the adjudication of appellee as a bankrupt; and that the claim was barred, because it was not proven against the bankrupt estate within one year, and was no longer binding and legally enforceable; and praying for the cancellation of the trustee's deed to Hall, as a cloud upon appellee's title. The appellants demurred to the bill, the demurrer was overruled, and an appeal granted to settle the principles of the case.

Sec. 60a of the Bankrupt Act (Act July 1, 1898, Ch. 541, 30 Stat. 562 [U. S. Comp. St., 1901, p. 3445]), as amended by Act Feb. 5, 1903, Ch. 487, section 13, 32 Stat. 799 (U. S. Comp. St. Supp. 1909, p. 1315), reads as follows: "A person shall be deemed to have given a preference if, being insolvent, he has, within four months before the filing of the petition, or after the filing of the petition and before the adjudication, procured or suffered a judgment to be entered against himself in favor of any person, or made a transfer of any of his property; and the effect of the enforcement of such judgment or transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class. Where the preference consists in a transfer, such period of four months shall not expire until four months after the date of the recording or registering of the transfer, if by law such recording or registering is required."

Sec. 2787 of the Mississippi Code of 1906, is as follows: "All bargains and sales, and all other conveyances whatsoever of lands, whether made for passing an estate of freehold or inheritance, or for a term of years; and all instruments of settlement upon marriage, wherein land, money or other personalty should be settled or covenanted to be left or paid at the death of the party, or otherwise; and all deeds of trust and mortgages whatsoever, shall be void as to all creditors and subsequent purchasers for a valuable consideration without notice, unless they be acknowledged or proved and lodged with the clerk of the chancery court of the proper county, to be recorded in the same manner that other conveyances are required to be acknowledged or proved and recorded; but the same as between the parties and their heirs, and as to all subsequent purchasers with notice or without valuable consideration, shall nevertheless be valid and binding."

*Pack & Montgomery,* for appellant.

If it be once admitted that this instrument was filed more than four months before the filing of a petition in bankruptcy or that it was not required by the statute of the state of Mississippi to be filed for record, appellee's suit immediately fails under the Bankruptcy Acts and allegations of appellee's bill. There can be no question on the part of the appellee that he knew of the existence of said trust deed, for he admits executing it for more than four months before the filing of his petition in bankruptcy. There is absolutely under the laws of the state of Mississippi, no necessity for the filing of this instrument for record so far as appellee's interest therein and liability thereon is concerned. The only purpose which filing for record serves, is that of giving notice to persons who have no notice of the execution of an instrument. Code of 1906, Sec. 2787, declares that instruments required to be recorded are valid and bind-

ing between the parties and their heirs without recording.

The law of bankruptcy declares this kind of instrument valid as between the bankrupt and the mortgagee.

In the third edition of Loveland on Bankruptcy, page 587, the above principle is announced in the following words:

"A mortgage, otherwise valid, may be void as a lien because it constitutes a perferance in the bankruptcy. This is so, not because such mortgages are fraudulent at common law or by the statutes of the state, or are immoral or dishonest, but simply because the statutes say they are voidable. Such mortgages are valid as between the mortgagee and the bankrupt. A trustee, taking only the title of the bankrupt, could not attack their validity, except as power is expressly given him by the Bankrupt Act."

' Then it follows that if appellee had no standing in a court of equity and was estopped from maintaining his said bill that the lower court erred in overruling the demurrer of appellant to said bill.

*Baskin & Wilbourn,* for appellant, filed an elaborate brief too long for publication.

*Flowers, Alexander & Whitfield,* for appellee, filed an elaborate brief too long for publication.

Argued orally by *R. E. Wilburn,* and *G. Montgomery,* for appellant.

Argued orally by *J. D. Stewart,* for appellee.

SMITH, J., delivered the opinion of the court.

If the deed of trust in question was valid under the laws of this state and under the bankrupt law, its lien survived the discharge of the bankrupt, and the purchaser at the foreclosure sale acquired a valid title to the property therein described. Its validity under the state law is not, and could not be, seriously questioned.

It was executed more than four months prior to the filing of the petition in bankruptcy; but, since it was recorded less than four months prior to the filing of this petition, it was invalid under the bankrupt law, if by the laws of this state it was required to be recorded. Under Sec. 2787 of the Code of 1906, as construed in *Loughridge* v. *Bowland,* 52 Miss. 546, an unrecorded deed of trust is valid as between the parties thereto and as against general creditors and consequently a deed of trust is not such an instrument, within the meaning of the bankrupt law, as is required by the laws of this state to be recorded. *Meyer Bros. Drug Co.* v. *Pipkin Drug Co.,* 136 Fed. 396, 69 C. C. A. 240.

The decree of the court below is reversed, and the bill dismissed.

*Dismissed.*

OPINION ON SUGGESTION OF ERROR.

MAYES, C. J.

This case was disposed of at a former sitting of the court, but is again called to our attention through the medium of a suggestion of error. The case comes to the court on appeal allowed by the chancellor to settle the principles of the case, the chancellor having overruled a demurrer to the bill of complaint filed by F. O. Horne, appellee.

On the first hearing of this case, this court was of the opinion that the lower court should have sustained the demurrer and dismissed the bill, and we accordingly so ordered. In the former opinion of the court we took the view that the note and trust deed to secure same was valid as between the parties and all others except "creditors and subsequent purchasers for a valuable consideration without notice," though not lodged with the chancery clerk of the proper county for record. Sec. 2787, Code 1906. There was no claim by any person that the

rights of any "subsequent purchaser for a valuable consideration" were involved in any way, and therefore. the only persons who could complain were "creditors." But this court held in the case of *Loughridge* v. *Bowland,* 52 Miss. 546, that the word "creditors" in the above statute meant only those creditors who had obtained a lien, and, since there were no such creditors, we held in the former opinion that, because the trust deed in question was executed more than four months prior to the voluntary petition in bankruptcy, it was a valid transaction under the state law, and hence a valid transaction under Sec. 60b of the bankrupt law, though not actually recorded until a few days before the adjudication in bankruptcy. In addition to the state authorities cited, this court cited the case of *Meyer Bros. Drug Co.* v. *Pipkin Drug Co.,* 136 Fed. 396, 69 C. C. A. 240. We recede from the legal conclusion announced by the court in its former decision and sustain the suggestion of error as to the law announced by that opinion, not because we are convinced that the court was wrong, but because the case can be decided on another ground. We are unable to find any case showing that the United States Supreme Court has ever decided the question involved in the original opinion, and the Circuit Courts of Appeals are in hopeless conflict on it. In the Circuit Courts of Appeals there are two distinct lines of authorities announced. One line of authority sustains the view announced by the case of *Meyer Bros. Drug Co.* v. *Pipkin Drug Co.,* 136 Fed. 396, 69 C. C. A. 240, which is that if a transfer is made prior to four months before an adjudication in bankruptcy, which is good as between the parties and as against general creditors without being recorded, such transfer is good under the bankrupt law, although such transfer is declared by the state law to be "absolutely void as against the creditors of the mortgagor or person making the same, and as against subsequent purchasers and mortgagees or lien

holders in good faith, unless such instrument, etc., be filed in the office of the county clerk,'' etc. In short, the above authority holds that under the bankrupt law no class of creditors can complain of the failure to record a transfer or mortgage, save those that are protected by the state law. This authority is followed in the circuit courts of appeals in the cases of *Eppstein & Co.* v. *Wilson,* 149 Fed. 197, 79 C. C. A. 155, and *In re Sturtevant,* 188 Fed. 196, 110 C. C. A. 68. The following cases in other United States Circuit Courts of Appeals (Judge Lurton, now Associate Justice of the Supreme Court of the United States delivering one of the ablest opinions on the subject) hold that, where a state statute requires a conveyance or transfer to be recorded in order to be effectual against any class or classes of persons, is a law by which such recording is ''required'' within the meaning of the bankrupt law which defines preference given by a debtor within four months prior to his bankruptcy, and provides that ''when the preference consists in such a transfer, such period of four months shall not expire until four months after the date of the recording or registering of the transfer, if by law such recording or registering is required.'' *Loeser* v. *Savings Deposit Bank & Trust Co.,* 148 Fed. 975, 78 C. C. A. 597, 18 L. R. A. (N. S.) 1233; *Rasmussen v. McKey,* 177 Fed. 141, 100 C. C. A. 561; *First National Bank* v. *Connett,* 142 Fed. 33, 73 C. C. A. 219, 5 L. R. A. (N. S.) 148; *Mattley* v. *Giesler,* 187 Fed. 970, 110 C. C. A. 90. The weight of authority seems to be against the view of the court as announced in the original opinion.

But what merit is there in this case so far as appellee is concerned? Let us examine his allegation of fact in the bill of complaint. It is unnecessary to pursue the statement of fact set forth in the bill in detail. We shall content ourselves with merely summarizing the main facts alleged in the bill. It appears from the complaint filed by appellee that he states that on December 4, 1907,

he was indebted to the Laurel Oil & Fertilizer Company on open account in the sum of one thousand four hundred and eighty-three dollars and four cents. In order to secure the payment of this debt, and on the date above stated, appellee executed to the fertilizer company a note secured by a trust deed on certain lots in the town of Union, Newton county. This trust deed was not filed for record until April 8, 1908, more than four months from the date it was given. On May 1, 1908, less than a month after the trust deed was filed, appellee filed a voluntary petition in bankruptcy, and was duly adjudicated a bankrupt under the federal laws. When appellee filed this voluntary petition in bankruptcy, the fertilizer company's claim was listed by him as a secured claim in his schedule of liabilities. This appears in the bankruptcy proceedings which are made an exhibit to the bill. It sufficiently appears from the bill of complaint that the fertilizer company had all the notice of the bankruptcy proceedings which the law required to be given to creditors. It is also shown by the bill of complaint that the fertilizer company made no effort to prove its claim, but rested upon its supposed legal rights as a secured creditor. At the time this bill was filed, it is shown that the time within which claims of general creditors might be proved had more than expired. The bill of complaint shows that after appellee was declared a bankrupt, and some time in 1909, appellee effected a composition settlement with his creditors, but the fertilizer company was not a party to this composition settlement; that is, it does not appear in the bill that the fertilizer company agreed to surrender any part of its securities or accepted any benefit under the composition. After the composition was effected, the bill of complaint alleges that the appellee received a discharge in bankruptcy, which, it is alleged, authorized him to be placed in charge of his own affairs with the right to use and dispose of his property at his own volition, and the appellee alleges

in the bill that the discharge released appellee from all liability on account of the indebtedness due to the fertilizer company, and it is alleged that this note and security became void and unenforceable from the date of the discharge. Appellee then alleges that notwithstanding this, on March 25, 1910, the trustee in the trust deed referred to above attempted to foreclose the trust deed for the purpose of collecting the debt secured by it, and it is charged that a sale of the lots in question was actually made in Decatur and the property purchased by one K. C. Hall, who had full knowledge of all the facts and circumstances relied upon to vacate the sale. The bill alleges that this sale was invalid, and passed no title.

Appellee further alleges in the bill that the object of the fertilizer company in taking the security in December, 1907, was to obtain a preference and protect and secure itself in this preference over other creditors. Appellee then charges that at the time he gave the trust deed to appellant he was insolvent and had been for many weeks, and that this fact was known to the fertilizer company at and prior to the time it took the note and trust deed. The appellee seeks by this bill to have the trustee's deed to Hall canceled as a cloud upon his title. It is our judgment that the bill of complaint entirely fails to state any cause of action, and the demurrer should have been sustained and the bill dismissed. There are many reasons why appellee cannot succeed, and we will proceed to state them.

In the first place, we have seen that it was not necessary for this trust deed to be recorded in order to make it valid as between the parties and as against the general creditors of appellee. See Sec. 2787 of the Code of 1906, and *Loughridge v. Bowland,* 52 Miss. 546. In this case all the creditors were general creditors, and therefore, under the laws of this state, the transfer or mortgage was a valid one. If it could have been avoided at

all, it could have been avoided only by the trustee in bankruptcy by a direct suit for that purpose and no such suit was ever instituted either by the trustee or any creditor, but the mortgage was treated as a valid security. Sec. 60b of the bankruptcy laws provides that, if a preference shall have been given by a bankrupt, etc., "it shall be voidable by the trustee and he may recover the property or its value from such person. And for the purpose of such recovery any court of bankruptcy, as herein before defined, and any state court which would have had jurisdiction if bankruptcy had not intervened, shall have concurrent jurisdiction." We see from the above that even though this be considered a preference under the bankrupt law, since it is valid under the state law, the mortgage is not void, but voidable at the suit of the trustee; and if no such suit is brought either by the trustee, or, in the event of his refusal to act, then by one of the creditors, then the transaction remains valid, and surely the bankrupt who participated in creating the fraudulent preference can never be heard in any court to complain of the invalidity of the mortgage. The very reason of the law in declaring a preference void is for the benefit of creditors and not the bankrupt, and, if the creditors do not care to complain, it is difficult for us to understand by what principle of equity the bankrupt can hope to have himself relieved from the liability which he has created in fraud of others' rights. On page 665 of Collier on Bankruptcy, he says that preferences under the bankrupt law are not void, but voidable. When a preference is given, title passes, and before it is set aside a recovery must be had. Again, the same authority says on page 672: "Subsection 'b' provides that a preference is voidable by the trustee, and he may recover the property or its value. There is no authority in any one else to maintain the required action. Any other rule, even were the statute not clear on this point, would lead to confusion.

The right of a trustee to recover à preference is not assignable. But, if the trustee refuses to sue, it has been held that a creditor may be permitted to do so for the benefit of all.'' The bill clearly shows that the appellant simply relied upon its security, and was satisfied with it. If the security was voidable under the bankrupt law, it was voidable at the instance of the trustee and for the benefit of the creditors, and was a valid security until it was assaulted by the proper parties. It could not have been attacked by the bankrupt, and, until assaulted by the proper parties, the holders of the security could rely upon it as a valid security, and were entitled to all the rights and privileges of secured creditors. One of these privileges was that the claim need not be proved in order to keep alive the right of appellant to enforce its security. Under the facts of this case, the bankrupt law held it intact, and it lived through the proceedings without being weakened or destroyed.

In Loveland on Bankruptcy it is stated that ''a secured creditor may rely upon his lien and neither prove his debt in bankruptcy nor release his security. In such case the security is preserved, notwithstanding the bankruptcy of the debtor.'' This statement of the law is again repeated in the same book on page 1098. If this is true, it follows that the discharge in bankruptcy had no bearing on this security. See section 469, *et seq.* If it be argued that this was no lien because it could have been avoided by the trustee, we answer that it was good until avoided, and it was never avoided, and therefore this mortgage is to all intents and purposes a valid mortgage and as such it is to be treated in this case as between the parties litigant.

We have shown from the above authorities that this mortgage was a valid mortgage under the state law as between the parties and all general creditors. We have also shown that, being valid under the state law as to

general creditors, it was valid under the bankrupt law until avoided by the trustee. In other words, if it could have been assailed under the bankrupt law, it must be assailed as a voidable, and not a void, instrument. We have also shown that the discharge of the bankrupt did not affect this security, since, if voidable, both trustee and creditors treated it as a valid security. In this view of it, we cannot understand on what principle of law or equity appellee hopes to secure a cancellation of the mortgage in a court of equity. In so far as the rights of appellee are concerned, they are to be determined just as if no bankruptcy proceedings had ever been instituted. When appellee instituted this suit in the equity court for the purpose of canceling this mortgage, he must stand upon the merits of the case made by the bill, and the extent of his rights are to be measured and controlled by the ordinary maxims and rules of equity unaffected by the bankruptcy proceedings. When he does this, there is no merit in the bill. In the first place, the bill of complaint states no cause of action, when we consider the bill without reference to the equitable estoppel that its face discloses as to appellee. Again, if the mortgage was fraudulent and obtained at a time when appellee was insolvent and for the purpose of obtaining a preference, then appellee was equally at fault with appellant, and a court of equity would refuse him any affirmative relief when he seeks to have the mortgage canceled. Again, if the mortgage was given as a preference by appellee to appellant, as the bill shows, for the purpose of taking an advantage of the general creditors, it was as much a wrong on the part of the person giving the mortgage as it was on the part of the one taking it, and a court of equity will aid neither to obtain any advantage of his wrong thus participated in. Both under the bankrupt law and under the general rules of equity this appellee has no standing in court, and it follows that, while we place the decision on a

different ground from that announced in the former opinion, the disposition of the case must be the same, and the decree of the lower court overruling the demurrer to the bill of complaint is reversed, the demurrer to the bill sustained, and the bill dismissed.

*Reversed and the bill dismissed.*