JOHN CADWALADER, JR., AND T. C. CADWALADER, EXECUTORS, ESTATE OF JOHN CADWALADER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 13296.   Promulgated January 22, 1929.

*Thomas F. Cadwalader, Esq.*, for the petitioner.
*John D. Foley, Esq.*, for the respondent.

### OPINION.

PHILLIPS: This proceeding comes before us on the petition of the executors of the estate of John Cadwalader, deceased, for a redetermination of deficiencies in tax upon the income of the decedent for the years 1920 to 1924, inclusive. The facts have been stipulated making unnecessary the adoption of any formal findings of fact.

Prior to August 31, 1918, decedent had loaned to one Stafford $80,000 evidenced by the notes of the debtor. On August 31, 1918, a petition in involuntary bankruptcy was filed against Stafford, and on September 27, 1918, he was duly adjudged bankrupt. Stafford was granted a discharge in bankruptcy on February 25, 1920. As collateral to the notes of Stafford petitioner held a certain bond and

1

mortgage, certain capital stock, and several insurance policies upon the life of Stafford. The principal amounts of such life insurance policies totaled $80,000. The cash surrender value of such policies at the date of the bankruptcy was $24,586. The decedent filed a claim against the estate of the bankrupt for $81,854.15, representing the principal indebtedness in the amount of $80,000 and accrued interest of $1,854.15. In such claim the decedent set out the security held by him. The bankruptcy court allowed his claim as an unsecured creditor for $57,268.15, being the difference between the amount claimed and the surrender value of the life insurance policies. In 1920 it became evident that the security held by the decedent, other than the life insurance policies, was worthless and that no more than a nominal amount would be realized from the proof of claim in the bankruptcy proceeding. In 1921 a dividend of $343.60 was declared and paid by the bankrupt estate upon this claim and in 1923 a similar dividend of $257.70 was declared and paid. At the time of the bankruptcy proceedings Stafford was nearing his seventy-third birthday. The decedent did not surrender the life insurance policies and receive their cash value, but elected to continue them and thereafter paid the premiums as they became due. Stafford was still alive at the time of the hearing of this proceeding and the policies were still in force.

The executors claim the right to deduct, during the taxable years involved, the amounts paid as premiums upon these insurance policies on the life of Stafford or, in the alternative, a deduction of the difference between the amount advanced to Stafford and the cash surrender value of the policies at the time of his bankruptcy as a debt ascertained to be worthless and charged off in 1920. We shall first dispose of the alternative contention.

It appears to be well established that bankruptcy does not affect an existing valid lien. Such lien continues and may be enforced in much the same manner as any other. See *Smith* v. *Zachry*, 115 Ga. 722; 42 S. E. 102; *Evans* v. *Rounsaville*, 115 Ga. 684; 425 S. E. 100; *Morganstein* v. *Commercial National Bank*, 125 Ill. App. 397; *McCall* v. *Herring*, 116 Ga. 235; 42 S. E. 468; *Bank of Commerce* v. *Elliott*, 609 Wis. 648; 85 N. W. 417; *Horn* v. *Bates*, 114 S. W. 763; *Laurel Oil Co.* v. *Home*, 101 Miss. 629; 57 So. 624. The decedent never foreclosed on the lien upon the life insurance policies by surrendering them for payment of their cash value or otherwise. These policies continued to be held by the decedent as security. Since the Revenue Act of 1918 does not permit any deduction for an indebtedness which is worthless only in part, and since there was no ascertainment that the debt was worthless in 1920, no deduction can be allowed in that year on the basis of a worthless indebtedness.

Nor has there been, in the absence of a foreclosure upon the collateral, such a loss as is contemplated by the Revenue Act.

We are of the opinion that the decedent was entitled to deduct the premiums paid to keep the policies alive. These payments add nothing to the principal amount, since any dividends on the policies were used to reduce the premiums paid. It therefore appears that the decedent was at no time in a position to recover more than the amount originally advanced to Stafford. This is unlike those situations where the principal amounts of the policies are in excess of the indebtedness and there is therefore the prospect of recovering both the indebtedness and the premiums paid. It is also unlike those cases where the taxpayer is the owner of the policy on which the premiums are paid, in which case the premiums serve to increase his equity. In this case the greatest amount which it will be possible to collect will be the amount loaned.

It was established during the taxable years that the decedent was bound to suffer a loss through this transaction. The question is whether that loss is deductible as one sustained in the bankruptcy, or as sustained over the years during which the security is kept alive by annual payments or as one to be sustained when the policies are realized upon. We have seen that it may not be deducted as one sustained in the bankruptcy proceedings. Ordinarily no deduction could be taken until the polices had been realized upon and the transaction closed. In a situation, however, such as we have here, where it appears that the indebtedness is the greatest amount which can ever be collected, it is evident that there must be a loss at least equal to the annual premiums which are paid, and we see no reason why the amount of such premiums should not be allowed as a deduction in the nature of a loss. This is particularly so for 1921 and succeeding years when, even if we accept the respondent's theory that these premium payments merely result in an increase in the indebtedness, it becomes evident that the amount by which the indebtedness is increased over the face amount of the policies is worthless and the debt might therefore be charged off as worthless in part. We are therefore of the opinion that during each of the years involved the decedent was entitled to deduct the net amount of the premiums paid less the dividend received in that year from the trustee in bankruptcy.

The third issue raised in the petition relates to the deduction of certain interest. It appears that prior to February 17, 1918, the petitioner owned a second mortgage of $30,000 and a third mortgage of $10,000 on property which was subject to a first mortgage of $270,000. The third mortgage was foreclosed and on February 17, 1918, the petitioner purchased the property at the foreclosure sale, and assumed payment of the first and second mortgages. On Febru-

4

ary 25, 1920, the petitioner sold this property. In computing the profit from that sale the Commissioner refused to allow as a deduction or as a part of the cost of the property, interest at the rate of 6 per cent per annum on the principal of the second mortgage. The decedent kept his accounts upon a cash receipts and disbursements basis. No part of the interest which it is now sought to include as a part of the cost of the property to decedent had been returned by him as income or was returnable by him as income during the period during which he held the property. Since he held this second mortgage, no interest was paid on it by him. Having paid out nothing, it would seem clear that he is entitled to deduct nothing. See *Ottawa Park Realty Co.*, 5 B. T. A. 474; *Arthur C. Fraser*, 6 B. T. A. 346; affd. 25 Fed. (2d) 653, where similar deductions were not allowed even when paid.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

SMITH and VAN FOSSAN dissent on the second point.