413 So.2d 370 (1982)
Cleveland Sedgie MORGAN, et al.
v.
Pat L. SAULS, Etc.
No. 53031.
Supreme Court of Mississippi.
March 10, 1982.
Rehearing Denied May 19, 1982.
Robert G. Turnage, Monticello, James R. Davis, Columbia, for appellants.
Thomas W. Tyner, Aultman & Aultman, Marcia C. McMahan, McMahan & McMahan, Hattiesburg, for appellee.
Before SUGG, WALKER and HAWKINS, JJ.
*371 HAWKINS, Justice, for the Court.
Morgantown is a rural community in Marion County, Mississippi. Cleveland Sedgie Morgan, the 81 year old father of five grown children, has lived there over 70 years. His front yard, enclosed by a metal cyclone fence, borders the north side of highway 587, a two-lane asphalt road. Facing his home on the other side of the highway is a country store, owned and operated by his son.
Over the years Mr. Morgan had been harassed from time to time by motor vehicles racing past his house at late hours of the night. On one occasion, someone shot into his home, and several times he had called law enforcement officials.
Around 1:00 a.m. on Sunday, September 23, 1979, Mr. Morgan was awakened by someone honking a car horn. Having gone to his front yard to investigate, Mr. Morgan spotted the car about 100 yards away, and began walking down the road toward it. The lights were flashing, and the horn continued to blow for about ten minutes. Mr. Morgan then started back to call the sheriff, and as he was stepping off the asphalt into his yard, the car sped past him. According to Mr. Morgan, it missed him by only six inches.
After this happened, Mr. Morgan picked up his shotgun that he had put down in his yard, and crossed the street to check the fire station and washerteria. In the mean time, the car had turned around and sped past him again.
Mr. Morgan returned to his yard and stood by a bush behind the cyclone fence. As the car drove past again, Mr. Morgan testified that he heard one occupant ask, "Where did the S.O.B. go?", to which another replied, "Yonder he is." The car proceeded to make a U-turn, and when it was in the middle of the road, Mr. Morgan shot, killing two youths, Charles Scott Sauls (age 17) and Donald Rex Morgan (age 18). Sauls died immediately, and Morgan died two days later.
Morgan was driving and Sauls was on the passenger side of the front seat. Shirley Leon Morgan, the younger brother of Donald Rex Morgan, was riding in the back seat.
Leon Morgan testified that his brother Rex had borrowed another brother's car the previous evening to go to a ballgame. After the game, Sauls accompanied the Morgans to Morgantown to see a young lady. They began blowing the horn at her home. There was no response to their horn blowing, so they left. He did not recall seeing Mr. Morgan or making any threats against him and said they had turned around without leaving Morgantown because Sauls wanted to throw a beer bottle at a dog he had seen. After turning toward Morgantown, they saw the dog. They were in the process of turning again in the middle of the road when the shot was fired by Mr. Morgan from his yard.
Young Morgan testified that he and his brother had smoked some marijuana during the night, and that his brother and Sauls had drunk some beer. As to whether this resulted in any of them being intoxicated or drug affected is not shown in the record.
Mr. Morgan was tried in the Circuit Court of Marion County and acquitted of the homicide of one of the boys.
Following September 22, 1979, certain deeds that had been executed prior to this date by Mr. Morgan to his children were filed of public record. He also executed additional conveyances which were likewise recorded in the office of the Chancery Clerk of Marion County.
The two fathers of Morgan and Sauls, as administrators of their respective estates and as representatives of all the heirs-at-law of the two youths, filed a joint bill of complaint in the Chancery Court of Marion County to set the deeds aside as fraudulent conveyances, and for a money judgment against Mr. Morgan. The complaint stated that Mr. Morgan had maliciously, willfully, wantonly, and negligently, and in complete disregard of human life, slain the young men. Mr. Morgan, as well as the grantees in the deeds executed by him, were the named defendants.
*372 The Chancellor found all deeds to be fraudulent conveyances, and set them aside as "fraudulent, void and no effect." He further awarded the heirs of the Morgan youth money damages in the amount of $240,000 and the heirs-at-law of Sauls $185,000.
From this final decree, all defendants have appealed.
The only two issues raised, which we need to discuss, are the sufficiency of the evidence as to (1) finding Mr. Morgan to have negligently shot the youths, and (2) setting aside the deeds as fraudulent conveyances.

LIABILITY
This is a tragic case. One can understand the frustration experienced by Mr. Morgan. The death of these boys also arouses deep sympathy. It was for the Chancellor to decide under the facts of the case whether Mr. Morgan shot these youths in self defense or whether it was a negligent act. As an appellate court, we are bound by the Chancellor's finding of fact, unless he was manifestly wrong. In this case, the Chancellor had abundant evidence to find that the killing was not done in necessary self defense, but was negligent. Mr. Morgan stated he did not intend to kill anybody, but wanted only to frighten them away. Yet he did kill two human beings in a single blast of his shotgun. Whether trespasses were committed against Mr. Morgan that night is disputed, but conceding that they were, the wages of the boys' transgressions was not death.
The Chancellor, therefore, was not in error in finding Mr. Morgan liable for negligently killing Sauls and Morgan. The amount of damages awarded the complainants is not contested on this appeal.

VALIDITY OF DEEDS
Nine conveyances executed by Mr. Morgan were contested by the complainants:
1. A mineral deed from C.S. Morgan to his wife Audrey M. Morgan, dated September 27, 1979, acknowledged the same date before a notary, filed for record in the chancery clerk's office of Marion County, September 28, 1979, and recorded in book 798, page 57. This deed is Exhibit "A" to the bill of complaint, and Exhibit 2 in evidence.
2. A warranty deed from C.S. Morgan and his wife, Audrey M. Morgan, to Eldridge L. Morgan, their son, dated August 28, 1975, acknowledged before a notary the same date, filed for record September 26, 1979, and recorded in book 785, page 103. This deed is Exhibit "B" to the bill, and Exhibit 3 in evidence.
3. A warranty deed from C.S. Morgan and his wife Audrey M. Morgan, to Rivers Morgan May, their daughter, dated May 2, 1975, acknowledged before a notary the same date, filed for record September 25, 1979, and recorded in book 785, page 100. This deed is Exhibit "C" to the bill, and Exhibit 4 in evidence.
4. A warranty deed from C.S. Morgan and his wife, Audrey M. Morgan, to Opal V. Morgan, their daughter, dated May 2, 1975, acknowledged before a notary the same date, filed for record September 26, 1979, and recorded in book 785, page 104. This deed is Exhibit "D" to the bill, and Exhibit 5 in evidence. In this conveyance the grantors reserved a life estate in themselves, subject to being voided at the option of the grantee in the event either of the grantors died and subsequent thereto the survivor remarried.
5. A warranty deed from C.S. Morgan and his wife, Audrey M. Morgan, to W.E. May, Feldon Morgan and Eldridge Morgan, dated September 26, 1979, filed for record September 27, 1979, and recorded in book 785, page 113. This deed is Exhibit "E" to the bill, and Exhibit 6 in evidence. The deed provides for the assumption by grantees of the outstanding indebtedness secured by a deed of trust of record due Columbia Bank.
6. A warranty deed from C.S. Morgan and his wife, Audrey M. Morgan, to Feldon Morgan (40% interest), Rivers M. May (30% interest), and John K. Morgan (30% interest), dated October 12, 1979, filed for record *373 October 12, 1979, and recorded in book 785, page 289. This deed is Exhibit "F" to the bill, and Exhibit 7 in evidence.
7. A warranty deed from C.S. Morgan and his wife, Audrey M. Morgan, to Feldon Morgan (40% interest), Rivers M. May (30% interest), and John K. Morgan (30% interest), dated on some date in September, acknowledged before a notary September 27, and filed for record September 28, 1979, in book 785, page 133. This deed is Exhibit "G" to the bill, and Exhibit 8 in evidence.
8. A warranty deed from C.S. Morgan and his wife, Audrey M. Morgan, to Eldridge L. Morgan, their son, dated October 16, 1979, and filed for record October 17, 1979, in book 785, page 397. This deed is Exhibit "H" to the bill, and Exhibit 9 in evidence.
9. A warranty deed from C.S. Morgan and Audrey M. Morgan to Feldon Morgan, dated October 16, 1979, and filed for record October 17, 1979, in book 785, page 399. This deed is Exhibit "I" to the bill, and Exhibit 10 in evidence. It recites that it is to replace a deed made to Feldon Morgan in 1975 which was misplaced or lost. The original deed, which this deed replaced, was located prior to trial and introduced in evidence as Exhibit 36. The original deed named as grantees Feldon Morgan and his wife Kathleen P. Morgan. This deed is dated May 2, 1975, and acknowledged the same date.
In Allred v. Nesmith, 245 Miss. 376, 149 So.2d 29 (1963), this Court held the victim was a creditor of a tort-feasor, and entitled to the benefit of the statute prohibiting conveyances to defraud creditors, presently Miss. Code Ann. § 15-3-3 (Supp. 1981). In so holding, we overruled two previous cases which indicate otherwise, and reverted to our original holding in McInnis v. Wiscassett Mills, 78 Miss. 52, 28 So. 725 (1900).[1]
All the deeds in this case were without monetary consideration, and were voluntary conveyances, with the exception of the deed from Mr. and Mrs. Morgan to May (their son-in-law) and two sons, Feldon and Eldridge, dated September 26, 1979, in which the grantees assumed an outstanding indebtedness to Columbia Bank (Deed Number 5 herein). Only one deed, the mineral deed, was to Mrs. Morgan. Four of the deeds were signed, executed and delivered prior to September 22, 1979, but not recorded before this date. The remaining five were executed and filed for public record following September 1979.
This entire lawsuit was brought on one theory: the conveyances were made to defraud the claimants. No other basis for the bill was pled or presented to the Chancellor for consideration as authority to cancel or set aside the deeds.
The statutory authority for this lawsuit is contained in three Mississippi statutes: Miss. Code Ann. § 15-3-3 (Supp. 1981) defining voluntary conveyances subject to being set aside; Miss. Code Ann. § 15-3-5 (1972) setting the limits upon such a claim; and Miss. Code Ann. § 11-5-75 (1972) giving chancery courts jurisdiction over cases to set aside fraudulent conveyances.[2]
Our sole consideration on this appeal is whether any of the conveyances fall within the prohibition of these statutes.
After Mr. Morgan had executed all the deeds set forth in the bill of complaint, *374 he was insolvent. A recitation of further evidence from the record is unnecessary to support the Chancellor in setting aside and cancelling as fraudulent the following deeds:
(a) The mineral deed from C.S. Morgan to his wife, Audrey M. Morgan dated September 27, 1979.
(b) The warranty deed from C.S. Morgan and wife Audrey M. Morgan to Feldon Morgan, Rivers M. May and John K. Morgan dated October 12, 1979.
(c) The warranty deed from C.S. Morgan and wife Audrey M. Morgan to Feldon M. Morgan, Rivers M. May and John K. Morgan acknowledged September 27, 1979.
(d) The warranty deed from C.S. Morgan and wife Audrey M. Morgan to Eldridge M. Morgan dated October 16, 1979.
All of these deeds were executed following September 22, 1979, and, of course, recorded following that date. These conveyances clearly fell within the proscription of Blount v. Blount, 231 Miss. 398, 95 So.2d 545 (1957); Odom v. Luehr, 226 Miss. 661, 85 So.2d 218 (1956); Reed v. Lavecchia, 187 Miss. 413, 193 So. 439 (1940); Robinson v. McShane, 163 Miss. 626, 140 So. 725 (1932); and Golden v. Goode, 76 Miss. 400, 24 So. 906 (1898).
Moreover, the mineral deed from Morgan to his wife was clearly invalid under Miss. Code Ann. § 93-3-9 (1972).[3]
As to the four deeds which were executed prior to September 22, 1979, an entirely different question is presented.[4] The record is clear and undisputed that the deeds were signed, acknowledged and delivered to the grantees several years before September 22, 1979. We are therefore faced with the narrow question of whether these four deeds, signed, notarized and delivered prior to September 22, 1979, should have been cancelled and set aside as fraudulent conveyances, absent proof of possession.
We must hold that the chancellor erred at this point. The pertinent portions of Miss. Code Ann. § 15-3-5 (1972) read as follows:
Section 15-3-3 shall not extend to any estate or interest in any lands ... which shall be upon good consideration and bona fide lawfully conveyed ... to any person ... nor shall it in any case extend to creditors whose debts were contracted after such fraudulent act, unless made with intent to defraud them, and though a conveyance or contract be decreed void as to prior creditors, it shall not, on that account, be void as to subsequent creditors or purchasers.
(emphasis added). Clearly the deeds were not executed with the intent to defraud the heirs of Sauls and Morgan. Appellees must therefore fail in their claim to set them aside as fraudulent conveyances, which was the only reason pleaded or asserted before the chancellor to set them aside. See Prestidge v. Cooper, 54 Miss. 74 (1876); Hilliard v. Cagle, 46 Miss. 309 (1872); Bullitt, Miller & Co. v. Taylor & Richardson, 34 Miss. 708, *375 69 Am.Dec. 412 (1858); Wells v. Treadwell, 28 Miss. 717 (1855).
Appellees argue for the first time on appeal that these deeds were invalid under the Miss. Code Ann. §§ 89-5-1 and 89-5-3 (1972) recording statutes.[5] They argue that since they were "creditors" prior to recordation, they are protected. Unfortunately for them, they did not plead these statutes. The chancellor was never called upon to decide, and there is nothing in his decree which does decide the question of whether appellees were "creditors" prior to recording these deeds under these statutes. Their entire case, as stated, was based upon the fraudulent conveyance statutes.
Moreover, §§ 89-5-1 and 89-5-3 do not deal as severely with unrecorded conveyances to persons other than a spouse, as does § 93-3-9. Had these conveyances been to Mrs. Morgan, a different question would be before us. Sections 89-5-1 and 89-5-3 state the conveyance shall not be valid against a "creditor" without recordation, while § 93-3-9 states the conveyance shall not be valid against "any third person" without recordation. Manifestly, the legislature intended a more stringent application of the rule when a spouse is grantee, otherwise there would have been no necessity for enactment of § 93-3-9. Sections 89-5-1 and 89-5-3 apply to a deed involving a spouse as well as to any other person. And, in the cases involving unrecorded transfers between spouses this Court has held § 93-3-9 protects general creditors who became such prior to recordation of the conveyance. (See cases cited in footnote 3 above). To be protected under §§ 89-5-1 and 89-5-3, however, we have construed "creditor" to mean a lien creditor.
In Loughbridge & Bogan v. Bowland, 52 Miss. 546, 558-59 (1876), we stated:
But the statute has been construed to mean creditors who have obtained a specific right against the property, such as a lien by attachment and judgment.
Before the creditor can object to the conveyance he must have a right to proceed against the specific land for satisfaction of his debt.
* * * * * *
The statute may receive this paraphrase: A purchaser must record his deed at his peril, for if he does not it shall be void as to that creditor of the vendor who acquires a lien on the property before he gets notice of the sale.
Further, in Laurel Oil & Fertilizer Co. v. Horne, 101 Miss. 629, 57 So. 624, suggestion of error 58 So. 652 (1911), this Court took occasion to state in both the original opinion and on suggestion of error that the word "creditors" in the statute means only those who have obtained a lien, and that an unrecorded conveyance is good as against a general creditor.
There remains but one conveyance, the warranty deed from Mr. and Mrs. Morgan to May, Feldon and Eldridge Morgan, dated September 26, 1979, and in which the grantees assume the outstanding indebtedness due Columbia Bank.
The recorded circumstances of the background on this conveyance are murky. Mr. Morgan did not testify in this case, and the court overruled a motion for a continuance because of his inability to appear in court. While no assignment of error was made concerning this ruling, the defendants were deprived of an opportunity to develop the circumstances of ownership of this property. Far from satisfactory or complete records of payments made by these three grantees were introduced. Also, one of the exhibits would indicate that Mr. Morgan bought this property as a constructive trustee, at least in part for these three grantees. This exhibit in Mr. Morgan's handwriting is not explained, but would *376 indicate that he intended when the land was purchased that by each of the grantees paying $8,000 each, they would own an undivided one-sixth interest each in the land, and records were introduced showing payments by these subsequent grantees.
As to this one deed, therefore, we reverse for the chancellor's consideration and decision on whether an enforceable trust existed between Mr. Morgan and his son-in-law and two sons, and if so, whether it is entitled to protection. Further, if no trust existed, or is not entitled to recognition in this action, then, the chancellor should determine whether these grantees should be reimbursed from any sale of the property to the extent of their payments on the note and deed of trust against the land, plus lawful interest.
The final decree of the chancery court is therefore:
AFFIRMED, on all monetary damages awarded appellees against appellant Cleveland Sedgie Morgan, and in setting aside as fraudulent conveyances the following deeds:
(a) The mineral deed from C.S. Morgan to his wife, Audrey M. Morgan dated September 27, 1979.
(b) The warranty deed from C.S. Morgan and wife Audrey M. Morgan to Feldon Morgan, Rivers M. May, and John K. Morgan dated October 12, 1979.
(c) The warranty deed from C.S. Morgan and wife Audrey M. Morgan to Feldon M. Morgan, Rivers M. May and John K. Morgan acknowledged September 27, 1979.
(d) The warranty deed from C.S. Morgan and wife Audrey M. Morgan to Eldridge L. Morgan dated October 16, 1979.
REVERSED AND RENDERED on that portion of the final decree cancelling and setting aside the following deeds:
(a) Deed from C.S. Morgan and wife to Eldridge L. Morgan, dated August 28, 1975.
(b) Deed from C.S. Morgan and wife to Rivers Morgan May, dated May 2, 1975.
(c) Deed from C.S. Morgan and wife to Opal V. Morgan, dated May 2, 1975.
(d) Deed from C.S. Morgan and wife to Feldon Morgan and wife Kathleen P. Morgan, dated May 2, 1975. This deed was misplaced and substituted by a new conveyance executed October 16, 1979.
REVERSED AND REMANDED for rehearing in accordance with this opinion as to the deed from Mr. and Mrs. Morgan to May, Feldon and Eldridge Morgan, dated September 26, 1979, and in which the grantees assume the outstanding indebtedness due Columbia Bank.
PATTERSON, C.J., SMITH and SUGG, P. JJ., and WALKER, ROY NOBLE LEE and BOWLING, JJ., concur.
BROOM and DAN M. LEE, JJ., took no part.

APPENDIX
§ 15-3-3. Fraudulent conveyances, judgments, loans and the like.
Every gift, grant, or conveyance of lands, tenements, or hereditaments, goods or chattels, or of any rent, common or other profit or charge out of the same, by writing or otherwise, and every bond, suit, judgment, or execution had or made and contrived of malice, fraud, covin, collusion, or guile, to the intent or purpose to delay, hinder, or defraud creditors of their just and lawful actions, suits, debts, accounts, damages, penalties, or forfeitures, or to defraud or deceive those who shall purchase the same lands, tenements, or hereditaments, or any rent, profit, or commodity out of them, shall be deemed and taken only as against the person or persons, his, her, or their heirs, successors, executors, administrators, or assigns, and every of them whose debts, suits, demands, estates, or interests by such guileful and covinous devices and practices shall or might be in any wise disturbed, *377 hindered, delayed, or defrauded, to be clearly and utterly void; any pretense, color, feigned consideration, expressing of use, or any other matter or thing to the contrary notwithstanding.
Moreover, if any conveyance be of goods or chattels, and be not on consideration deemed valuable in law, it shall be taken to be fraudulent within this section, unless the same be by will duly proved and recorded, or by writing acknowledged or proved, and such writing, if the same be for real estate, shall be acknowledged or proved and filed for record in the county where the land conveyed is situated, and, if for personal property, then in the county where the donee shall reside or the property shall be. The proof or acknowledgment in either case shall be taken or made and certified in the same manner as conveyances of lands and tenements are by law directed to be acknowledged or proved, unless, in the case of personal property, possession shall really and bona fide remain with the donee.
And in like manner, where any loan of goods or chattels shall be pretended to have been made to any person, the possession thereof having remained with said person or with those claiming under him for the space of three years without demand made and pursued by due course of law on the part of the pretended lender, or where any reservation or limitation shall be pretended to have been made of a use of property by way of condition, reversion, remainder, or otherwise in goods or chattels, the possession thereof having remained in another or those claiming under him for a space of three years without demand made and pursued by due course of law on the part of the one making such pretended reservation or limitation, the same shall be taken to be fraudulent within this statute as to the creditors and purchasers of the persons so remaining in possession, and the absolute property shall be deemed to be with the possession, unless such loan, reservation, or limitation were declared by will or by writing, proved or acknowledged, and filed for record.
§ 15-3-5. Fraudulent conveyances, judgments, loans and the like  exceptions.
Section 15-3-3 shall not extend to any estate or interest in any lands, goods or chattels, or any rents, common, or profit out of the same, which shall be upon good consideration and bona fide lawfully conveyed or assured to any person or persons, bodies-politic or corporate, nor shall it in any case extend to creditors whose debts were contracted after such fraudulent act, unless made with intent to defraud them, and though a conveyance or contract be decreed void as to prior creditors, it shall not, on that account, be void as to subsequent creditors or purchasers.
§ 11-5-75. Creditors may attack fraudulent conveyances.
The chancery court shall have jurisdiction of bills exhibited by creditors who have not obtained judgments at law, or, having judgments, have not had executions returned unsatisfied, whether their debts be due or not, to set aside fraudulent conveyances of property, or other devices resorted to for the purpose of hindering, delaying or defrauding creditors; and may subject the property to the satisfaction of the demands of such creditors as if complainants had judgments and execution thereon returned "no property found." Upon such a bill, a writ of sequestration or injunction, or both, may be issued upon like terms and conditions as such writs may be issued in other cases, and subject to such proceedings and provisions thereafter as are applicable in other cases of such writs; and the chancellor of the proper district shall have power and authority to grant orders for receivers, in same manner as if the creditor had recovered judgment and had execution returned "no property found." The creditor in such case shall have a lien upon the property described therein from the filing of his bill, except as against bona fide purchasers before the service of process upon the defendant in such bill.
NOTES
[1] The McInnis case would appear to hold a tort claimant is not a creditor until he files suit:

We reject as unsound the proposition advanced by appellees that complainant, whose claim rested on tort, could not come within the protection of the statute of frauds. In determining who is a creditor, the statute must be liberally construed, and it protects, at least as against actual fraud, one who, at the time of the conveyance, is suing the grantor in an action of tort. Bump on Fraud. Con., 493.
78 Miss. at 55, 28 So. at 726 (emphasis added).
In this case the bill of complaint was filed December 18, 1979, but we do not believe this distinction between a tort creditor and a contract creditor affects our decision in this case. Clearly as to all deeds executed after September 22, 1979, with the possible exception of the deed that had an encumbrance (noted later in opinion), the chancellor had abundant evidence to find specific intent to defraud subsequent creditors.
[2] The above statutes are set forth in full in the appendix to this opinion.
[3] The pertinent portions of this statute read as follows:

The transfer or conveyance of ... lands ... between husband and wife, shall not be valid as against any third person, unless the transfer or conveyance be in writing and acknowledged and filed for record as a mortgage or deed of trust is required to be. Possession of the property shall not be equivalent to filing the writing for record, but, to affect third persons, the writing must be filed for record.
(emphasis added).
Under our holdings in Hudson v. Allen, 313 So.2d 401 (Miss. 1975); McCrory v. Donald, 119 Miss. 256, 80 So. 643 (1918); and Gregory, Stagg & Co. v. Dodds, 60 Miss. 549 (1882), a conveyance to a spouse which is recorded post creditor relationship with a third party is invalid as to the creditor, whether conveyed in good faith, or not.
[4] The deeds executed prior to September 22, 1979, are as follows:

(a) deed from C.S. Morgan and wife to Eldridge L. Morgan, dated August 28, 1975;
(b) deed from C.S. Morgan and wife to Rivers Morgan May, dated May 2, 1975;
(c) deed from C.S. Morgan and wife to Opal V. Morgan, dated May 2, 1975; and
(d) deed from C.S. Morgan and wife to Feldon Morgan and wife Kathleen P. Morgan, dated May 2, 1975. This deed was misplaced and substituted by a new conveyance executed October 16, 1979. It is Exhibit "I" to the bill.
[5] Had the grantees gone into open possession of the land conveyed to them they would have been protected, in any event, even though their deeds were not recorded of public record until after September 22, 1979. Gulf Refining Co. v. Travis, 201 Miss. 336, 29 So.2d 100, suggestion of error 30 So.2d 398 (1947). The record is silent on whether any of these grantees went into possession of the land following delivery of their deeds. Since the attorneys representing the defendants did not see fit to offer any proof of possession of the land by the grantees following execution of the deeds, we must assume they did not take possession.