## LAVECCHIA *v.* REED.

(Division B. Oct. 28, 1935.)

[163 So. 681. No. 31825.]

Brunini & Hirsch, of Vicksburg, for appellant.

Wm. I. McKay and Dent, Dent & Robinson, all of Vicksburg, for appellee.

Anderson, J., delivered the opinion of the court.

Appellee brought this action in the circuit court of Warren county against appellant to recover the sum of two thousand forty dollars, alleged to be brokerage commissions due him for his services in procuring a lessee for the National Park Hotel in Vicksburg. At the conclusion of the evidence, on appellee's motion the court directed a verdict and judgment in his favor for the amount sued for. From that judgment appellant prosecutes this appeal.

The National Park Hotel in Vicksburg belonged to the estate of Vincent Lavecchia. Appellant had authority from the owners to lease the hotel and sell the furnishings therein. He listed the property with appellee, a hotel broker in Chicago, Illinois. The brokerage contract contained this provision: "I hereby list with you for sale the furniture, equipment, or corporate stock, and the leasing of the building of the following named hotel, upon terms set forth herein. You are to make no charge unless instrumental in securing a purchaser or lessee, in which event I hereby agree to pay you a com-

mission of 5% in cash, on total list price or total amount of any sale actually made, for the furniture, equipment, or corporate stock, and in addition 2% on the total rental reserved in lease, Minimum commission $250.00.''

On October 29, 1933, through appellee's efforts, appellant sold the hotel furnishings to Alex Holman for nine thousand dollars and leased him the hotel for a period of fifteen years for one hundred two thousand dollars, payable four hundred dollars a month for the first year; four hundred fifty dollars a month for the second year; five hundred dollars a month for the third year; five hundred fifty dollars a month for the fourth year; and six hundred dollars a month for the remaining eleven years. Appellee claimed and sued for a two per cent commission on that amount. Appellant paid him the five per cent commission on the amount of the sale of the hotel furnishings but refused to pay the two per cent commission on the one hundred two thousand dollars. After a few months Holman, the lessee, breached his lease contract and abandoned the hotel.

The authorities in this country now seem to be unanimous in holding that when a real estate broker procures a purchaser or lessee, as the case may be, who is accepted by the owner, and a valid contract is entered into between them, the commission for finding such a purchaser or lessee is then earned, although the purchaser or lessee later defaults. Notes to Tarbell v. Bomes, 48 R. I. 86, 135 Atl. 604, 51 A. L. R. 1386. Among the authorities cited in the notes as supporting the principle are Long v. Griffith, 113 Miss. 659, 74 So. 613, and Roberts v. Kimmons, 65 Miss. 332, 3 So. 736. Melvin v. Aldridge, 81 Md. 650, 32 Atl. 389, alone is referred to as holding to the contrary. With reference to that case and other Maryland supporting decisions the note writer states that their force has been spent by section 17, article 2 of the Maryland Code, which provides that a broker

shall be deemed to have earned his agreed commission whether the contract entered into be actually carried into effect or not, unless due to some act of the broker.

We see no reason to depart from these principles so well established and so long practiced.

Appellant contends, however, that if these principles be sound the contract itself takes this case from under them, because by its plain unambiguous language it provided for two per cent commission on the lease rentals if and as they were paid. We disagree with appellant. We think the language of the contract, fairly interpreted, means the exact contrary. It provided "a commission of 5% in cash" on the amount of the sale of the furnishings "and in addition 2% on the total rental reserved in lease." What was the use of repeating "in cash" after the figures "2%?" We see none. We think the words "in cash" after the figures "5%" are necessarily understood to also follow the figures "2%."

Affirmed.