REED v. LAVECCHIA et al.

(Division B. Feb. 5, 1940.)

[193 So. 439. No. 33902.]

Dent, Robinson & Ward, Wm. I. McKay, and Leonard
E. Nelson, all of Vicksburg, for appellant.

Chaney & Culkin, of Vicksburg, for appellee.

**McGehee, J.**, delivered the opinion of the court.

The appellant recovered a judgment in the Circuit Court of Warren county for $2,040, against one of the appellees, Jos. V. Lavecchia, early in the year 1935, in a suit filed in said court in February, 1934. While this suit was pending the said appellee, on April 28, 1934, assigned his interest in his father's estate (then being administered by him as administrator D. B. N. and C. T. A.) to his wife, Mary Hilda Lavecchia, who is also one of the appellees on this appeal from a final decree of the Chancery Court of said county, declining to subject certain personal property claimed by her to the payment of the judgment aforesaid and which said property, consisting of the furniture, fixtures and equipment in the National Park Hotel at Vicksburg, was purchased and acquired by the judgment debtor, subsequent to his father's death, from the Continental Hotel Company.

As to the assignment of the judgment debtor's interest in his father's estate, the written instrument, as duly acknowledged and recorded during the pendency of appellant's suit in the Circuit Court, shows on its face that it was a voluntary conveyance, the consideration being recited as $1 and love and affection. Moreover, in a subsequent suit filed by the brothers and sisters of the judgment debtor against him for an accounting of the rents, profits and other funds derived from their father's es-

tate, and which he had misappropriated in excess of $17,000, the said assignment was set aside by consent of the parties as fraudulent and void, so far as the rights of the other heirs at law were concerned. No appeal was taken by the assignor from that decree. An appeal was prosecuted by the surety on his bond as administrator, and the case was decided on a legal question not involved here. Fidelity & Deposit Co. v. Doughtry et al., 181 Miss. 586, 179 So. 846.

In addition to the foregoing admission of record, a member of the Bar, W. I. McKay, testified in the present suit that during the trial of the Doughtry case, supra, ''I heard her (the wife) say that instrument was executed on account of the Reed claim or judgment.'' But it is suggested that the attorney said ''My recollection is'' that such a statement was made. Those words, however, relate to the month and year when the trial was held, and the place where she was in the courtroom. There is no uncertainty about his testimony in regard to what he heard her say. He went further, and said that he remembered having been very much amused at this admission at the time, and had remembered it definitely ever since. The wife, of course, denied that the Reed claim or suit was mentioned in the family suit referred to. But there is no occasion for the Court to be concerned with the conflict in the testimony on that issue, since the final decree rendered by the same court in that case adjudged that the assignment be set aside, by consent, as fraudulent and void as to certain creditors, and the instrument itself shows that it was a voluntary conveyance, and the proof shows that it was executed by an insolvent debtor. We have called attention to the incident merely as having a bearing on the other testimony hereinafter mentioned.

In the instant case, the record in the suit wherein the appellant obtained his judgment in the Circuit Court, as well as the record of the evidence taken in the family suit, were introduced.

In the Circuit Court case, which was appealed here and

affirmed, Lavecchia v. Reed, 174 Miss. 9, 163 So. 681, it was shown that in 1933 the now judgment debtor claimed to own all of the furnishings, fixtures and equipment, purchased by him from the Continental Hotel Company during the year 1931, and that he listed them with the appellant Reed for sale as his own, together with a listing of the National Park Hotel for sale or lease, under a sales agency contract wherein he was asked, and answered, the following question: "Do you own all furnishings?" Answer, "Yes." Pursuant to this sales contract, Reed sold the furnishings to one Holman for $9000; and leased him the hotel for a stipulated rent.

In the family suit, which, as aforesaid, was tried subsequent to the rendition and enrollment of the Circuit Court judgment in favor of the appellant, Reed (recovered for commissions on the above-mentioned sale of the furnishings and lease of the hotel to Holman), the judgment debtor testified that at the time of the sale and lease made to Holman, he had already conveyed the hotel furnishings to his wife, and that therefore she received the $2000 cash payment made by Holman on the said furnishings. Holman's notes for deferred payments were taken in her favor, and a check for $450, with her name signed thereto, was delivered to Reed as part payment on the commission. The papers were prepared between Holman and Mrs. Lavecchia at the office of a local attorney, and it is not shown that Reed had known her in the transaction prior to that date, or that he knew whether the name signed to the commission check was the name of the wife or some other relative of the appellee, Jos. V. Lavecchia. In fact, it is immaterial that the said Jos. V. Levecchia, who had listed the furnishings for sale as his own, and who had been in possession of them in operating the hotel for two years had three months as shown by his testimony in the family suit, should have let the notes be made payable to his wife. The question is: who owned these furnishings, worth $9000 or $10,000, when sold to Holman, and which he later turned back to the

supposed vendor on account of his inability to meet the deferred payments? And the further inquiry is: Who still owned them when the judgment was rendered and enrolled in 1935?

When the present suit came on for trial the appellees produced two unrecorded bills of sale covering the hotel "furniture, fixtures and equipment, and all other assets of every sort, kind and description in the said National Park Hotel," one of which was signed by the said Jos. V. Lavecchia in favor of his wife's sister, Loretta Countryman, and dated December 18th, 1931, and the other signed by the said Loretta Countryman in favor of the wife of her said grantor, dated February 16th, 1932, and conveying the same property, notwithstanding that the said Jos. V. Lavecchia had sworn in the family suit that he had, prior to the sale to Holman in 1933, conveyed all of the furnishings in the hotel to his said wife (not to Mrs. Countryman). The said Mrs. Countryman testified that she had loaned Jos. V. Lavecchia the sum of $1200 over a period of six months immediately preceding the execution of this instrument in her favor, and in amounts of "twenties or sixties," or whatever she happened to have at the itme. That it was not advanced by check or otherwise drawn from a bank, nor was there any receipt taken, or other record kept thereof. When asked, "Have you any way by which you kept track—any record?", she replied: "No, I knew how much I had—that was all." She was then asked: "Now this $1,200 was—you got that back from Mrs. Lavecchia—is that correct?" And she answered, "That's right." She was then asked the following questions, and gave the answers as herein below shown: "You had no use for any hotel furnishings at all?" A. "No, not necessarily." Q. "Then your purpose—the purpose of conveying—the purpose of this conveyance was to secure to you the $1200 you had loaned them?" A. "Yes," Q. "Your reconveyance to them—it was understood you would reconvey to them when they repaid you the $1,200.00?" A. "Well,—yes,

—I guess so." She then said that she was not repaid this sum at the time she, in turn, executed her bill of sale back to Mrs. Lavecchia, on February 16th, 1932, but that it was likewise repaid in small amounts. Mrs. Lavecchia failed to explain where she thereafter obtained sufficient money to actually buy these valuable furnishings, which her husband continued to deal with as his own.

Assuming that these two instruments were executed on the dates which they bear, the above quoted testimony clearly shows that the instrument in favor of Mrs. Countryman, although absolute in form, was taken as a mere security, if we further assume that she made the loan of "twenties and sixties," as testified. This being true, Mrs. Lavecchia merely succeeded to the right and equity of her grantor when she took a bill of sale direct instead of an assignment of the one held by said grantor, Mrs. Countryman. This property is shown to have been worth at that time approximately $10,000 or $11,000, and was wholly indispensable to the grantor of Mrs. Countryman in his operation of the hotel, as well as useless to her, and continued to remain in his possession, as he dealt with it as his own, and later listed it with appellant for sale; and if it be true that the appellee, Mrs. Lavecchia, repaid the $1,200, which her sister claims to have loaned to the appellee, Jos. V. Lavecchia, the facts disclosed that she merely held an equitable lien against the same, for which she afterwards received the sum of $1550, representing the net proceeds of the $2000 cash payment made by Holman when the furnishings were actually sold in 1933.

On the issue as to whether there was a bona fide sale from Jos. V. Lavecchia to his sister-in-law, the following well-known labels and badges of fraud are disclosed by the evidence: Inadequacy of consideration, transaction not in usual course or mode of doing business, absolute conveyance as security, secrecy, insolvency of grantor, transfer of all his property, attempting to give

evidence of fairness by conscripting sister-in-law as a conduit for passing title to the wife, retention of possession, failure to take a list of the property covered by the conveyance which was commingled with some furniture and fixtures belonging to his father's estate, relationship of the parties, and transfer to person having no apparent use for the property.

The only claim of title asserted by the wife of the judgment debtor, so far as the hotel furnishings which did not belong to his father's estate are concerned, is based upon the two bills of sale hereinbefore mentioned, and while it is true that they may have been executed before the claim arose on which the Circuit Court judgment in favor of the appellant is predicated, the fact remains that the furniture and fixtures acquired by the appellee, Jos. V. Lavecchia, from the Continental Hotel Company were, according to the overwhelming weight of the credible testimony, still his property at the time of the rendition and enrollment of said judgment, and are subject to the lien thereof, for the reason that if we assume the finding of the Chancellor to be correct in regard to the actual making of the $1200 loan and the execution of the two bills of sale, the testimony of the grantees therein does not establish a sale, but a mere security for money which has been repaid, leaving the title of the property in question in the judgment debtor.

Reversed and decree here for the appellant.