607 So.2d 1192 (1992)
Judy M. McNEIL
v.
Donald W. McNEIL and D.J. McNEIL.
No. 90-CA-1089.
Supreme Court of Mississippi.
September 17, 1992.
Rehearing Denied November 19, 1992.
David Shoemake, Collins, for appellant.
R.K. Houston, Houston Law Office, Bay Springs, J. Robert Sullivan, John L. Jeffries, Laurel, for appellees.
Before HAWKINS, P.J., and PRATHER and McRAE, JJ.
PRATHER, Justice, for the Court:

I. INTRODUCTION
This domestic relations appeal began as a contempt of court case by Judy M. McNeil (Judy) against her ex-husband Donald W. McNeil (Don). It was consolidated with a subsequent suit filed by Judy against Don and his father, D.J. McNeil, to set aside an alleged fraudulent dissolution of their father-son business partnership to avoid Don's paying his financial obligations to his first family. Judy appeals the judgment of the Chancery Court of Simpson County assigning as errors:

*1193 A. Whether the trial court erred in dismissing Judy's complaint to set aside Don's conveyance of partnership interest to his father.

B. Whether the trial court erred in modifying the 1983 divorce decree by declaring the cost-of-living provision to be ambiguous, unenforceable, and void.
Ex-husband Donald W. McNeil cross-appeals assigning the following issue:
C. Whether the trial court erred in determining $7,535 to be reasonable attorney's fees for Judy.

II. FACTS
Don and Judy McNeil married in 1971, to which marriage were born three children, in 1974, 1976, and 1979. On October 19, 1983, the Chancery Court of Simpson County issued to Judy a final decree of divorce based on irreconcilable differences, incorporating a property-settlement agreement. The court ordered Don to pay Judy $1,500 per month as child support with a cost-of-living adjustment and payments of $1,000, twice a year, for children's clothing. The granting of the divorce spawned a lengthy series of legal events beginning January, 1985, too numerous to detail. The current suit in 1987 began with the filing of a contempt of court complaint by Judy for Don's alleged failure to meet his financial obligations under the divorce decree for child support and house payments. She also alleged Don's failure to furnish her with required proof of medical insurance coverage and a will benefiting his children, all as he had agreed. She also sought an increase in child support.
In February, 1988, during the pendency of this litigation Don and his father, D.J., dissolved their electric and plumbing business partnership. This event prompted more litigation from Don who amended his motion to modify the decree, alleging that he had experienced a reduction in income after the partnership dissolution. In the March 7, 1988 hearing, the chancellor found that Don had failed to fulfill the requirements of the 1983 decree's cost-of-living provision and had failed to prepare his will in accordance with the 1983 decree. The court ordered Don to remedy these failures and ordered him to pay $800 in attorney's fees. The court continued hearing the other motions for modification, review, and citations for contempt.
On April 5, 1988, Judy filed a complaint against Don and his father, D.J., for allegedly fraudulently dissolving their partnership to avoid paying child support. To counter, on April 25, 1988, Don petitioned for relief, claiming that the cost-of-living provision in the final decree was "unconscionable, unfair, unjust, unenforceable, and void," and that his changed financial circumstances warranted a change in his child support obligation. A new issue was raised by Don asserting that the 1983 decree's requirement that he pay the indebtedness on Judy's home constituted alimony, which issue Judy charges to be malicious.
In the consolidated action, the chancellor issued his judgment on September 10, 1990, detailed in each of the issues below.

III. ANALYSIS
Regarding the applicable standard of review, this Court will uphold a chancellor's findings of fact where substantial evidence supports those findings. Wing v. Wing, 549 So.2d 944, 948 (Miss. 1989). This Court has also defined reversibility in terms of "manifest error." Mullins v. Ratcliff, 515 So.2d 1183, 1193 (Miss. 1987). Lacking specific factfindings, this Court assumes that the chancellor resolved fact issues in the appellee's favor. Id.

A. Whether the trial court erred in dismissing Judy's complaint to set aside Don's conveyance of partnership interest to his father, D.J.
Judy alleges that the trial court should have found that Don fraudulently conveyed a partnership interest to his father in order to avoid financial obligations. According to Don, however, his own abuse of partnership assets led his father to rightfully dissolve it.
Don worked with his father all his adult life, and became his father's business partner *1194 in the electric and plumbing store in 1978, years prior to his divorce. Under the articles forming the business partnership between D.J. and Don McNeil, D.J. retained the right to buy out Don's interest for $20,000. At formation, Don signed a promissory note for $20,000 which he admittedly never paid.
After Don's father, D.J., had a stroke in 1984, D.J. could not do any physical, outside work, but could still manage the business internally. Don performed all of the on-site work to fulfill the construction contracts.
Profits were to be split equally. At the time of the divorce in 1983, Don was earning $94,800; in 1984, Don earned $97,962; in 1985, Don earned $115,027; in 1986 he earned $136,183; in 1987 Don had an income of $125,400 from his half-interest in the partnership with his father. That year he wrote checks totalling $140,674. Based on partnership returns, withdrawals for the partnership exceeded income in 1984, 1986, and 1987. At the beginning of 1988, Don's capital account showed a deficit of $76,454. He earned $35,090, prior to the partnership dissolution, leaving a $30,000 shortfall.
In late January, 1988, Don signed papers dissolving his partnership with his father. Don stated that he knew nothing of the dissolution until his father presented him with the papers exercising his contractual right to rebuy Don's interest. In the dissolution, Don assigned all his interest and assets to his father, land, buildings, trucks, and bank account of $100,000. Don received no cash payment of consideration, but his father cancelled Don's $20,000 promissory note as consideration for the conveyance. Don also had to sign a promissory note for $60,651, to repay the partnership what he owed, with payments of $6,000 plus interest due each January 31.
In 1988, after dissolving the partnership, Don earned $24,000 per year as an employee and an officer of his father's company. Don's wife also went to work for the company. Their joint returns reveal a gross income of $42,030 in 1989 and $30,500 in 1990.
After the partnership dissolution, Don continued doing the same work with the same responsibility. Don estimated that living expenses for his second wife and two children totalled $2,400-2,500 per month. Don testified that his expenses continue to outstrip his resources, but his father has covered overdrafts. He owns seven IRAs (retirement funds) totalling $20,853. Regarding his second wife's car, Don stated that his father had bought this car. Don has insured his house, which is debt free, for $200,000, other structures for $20,000, and personal property inside the house for $100,000. He estimates its actual market value at $125,000. For 1988 through 1990, Don's father, D.J., paid Don's support obligations to Judy, including house payments and Don's attorneys' fees in the present action. Don testified that he has no funds beyond his business income with which to pay child support.
During pretrial motions, counsel for Judy noted that several witnesses on the fraud issue could not attend trial due to medical and other excuses: one employee's father had died, another employee had recently had throat surgery, and Don's parents offered doctor's excuses.
In the court's September 10, 1990 judgment, the chancellor dismissed Judy's complaint that asked the court to set aside Don's conveyance of partnership interest to his father. The chancellor stated, in his opinion:
[R]egardless of what Mr. Don McNeil's relationship to the partnership was, the evidence shows that under the partnership agreement when it was formed that D.J. McNeil, in Paragraph 12, had a right to buy him out; and, in addition thereto, the evidence, which this court is bound to accept unless some evidence to the contrary is offered, shows that he owed $60,651.41, as shows by Exhibit 19, when the partnership was dissolved. So Exhibits 13 and 19 would show that regardless of what conveyance he made, if any, he did not convey an asset which would be available to enforce this judgment from. To the contrary, he may have improved his financial standing by the transaction if you consider the fact that he has not *1195 paid either of the notes, when he went into the partnership or when he got out of it, and no demand has been made on him to pay it, and perhaps, with a loving father and son relationship, there may not be. But aside from that, to show the fraudulent, conveyance, the party claiming the fraudulent conveyance must show from clear, cogent, and convincing evidence that there was a fraudulent conveyance made to avoid or evade a legal indebtedness; and the evidence offered in this case failed to support any such finding... .
As stated in Blount v. Blount, 231 Miss. 398, 413, 95 So.2d 545, 551-52 (1957), and in Barbee v. Pigott, 507 So.2d 77, 84 (Miss. 1987), a fraudulent conveyance made by two people for the sole purpose of "cheating creditors was void as to such creditors, whether supported by consideration or not. A debtor does have a right to prefer one creditor over another even if the creditor is a close family member." Barbee, supra at 85. However, in Mississippi, "[w]here an immediate member of a family is preferred as a creditor there must be clear and satisfactory proof of a valid and subsisting debt which would be enforced and payment exacted regardless of the fortune or misfortune of the debtor." Barbee v. Pigott, 507 So.2d 77, 85 (Miss. 1987) (citing Blount v. Blount, 231 Miss. 398, 412-13, 95 So.2d at 551-52 (1957)). See generally Joe T. Dehmer Distributors, Inc. v. Temple, 826 F.2d 1463 (D.Miss. 1984) (conveyance made between relatives and at a point in time when grantor cannot pay bills raises suspicion and is subject to cancellation).
In order to ascertain whether, under the facts, actual fraud occurred, the trial court should analyze the presence of the "badges of fraud" to determine the issue of a bona fide conveyance. Southeast Bank v. I.P. Sarullo Ent., 555 So.2d 704, 708 (Miss. 1989); see also Barbee, 507 So.2d at 85; Reed v. Lavecchia, 187 Miss. 413, 193 So. 439, 441 (1940).
In Reed v. Lavecchia, 187 Miss. 413, 193 So. 439 (1940), we enumerated several "badges of fraud" regarding the issue of a bona fide conveyance:
[I]nadequacy of consideration, transaction not in usual course or mode of doing business, absolute conveyance as security, secrecy, insolvency of grantor, transfer of all his property, attempting to give evidence of fairness... . retention of possession, ... relationship of the parties, and transfer to person having no apparent use for the property.
Id. at 424-25, 193 So. at 441.
The chancellor noted the partnership agreement between the father and son as a typical business document in which the father retained the right to rebuy the partnership assets. Under the prior contractual agreement the chancery court acknowledged the binding force of that document and the absence of any facts to void it. The chancery court relied upon the business records reflecting the debt of the partnership at the time of its dissolution and the assumption of that deficit by the son as evidenced by his promissory note to the father. This business was originally the father's, and when the partnership was formed the son executed a $20,000 note to the father. There is no dispute of the validity of this debt, nor its non-payment. It was a legitimate debt of the son, and it was the intention of the father that it be repaid. The chancellor noted that the father made no demand because of the father-son relationship; he in fact did enforce it at the termination of the partnership when he credited it. True, the son was imminently facing legal action regarding his contempt charges, and in the trial the father was too ill to testify for the ex-daughter-in-law, who sought his testimony. The chancellor as factfinder found that there was a failure of evidence to show by clear and convincing evidence a fraudulent conveyance, and this Court cannot say that the finding in the record is without support. The chancellor is affirmed.

B. Whether the trial court erred in modifying the 1983 divorce decree by declaring the cost-of-living provision to be ambiguous, unenforceable, and void.
According to Judy, the court erred in its decision to invalidate the cost-of-living provision. *1196 Don contends that the clause indeed constituted an unenforceably ambiguous provision. He reasons that, if unenforceable due to ambiguity, no judgment can be calculated or due. Judy further asserts that, regardless of the merits of the chancellor's findings, the court did not have the authority to release Don from the obligation for amounts which had already become due and vested, those for March 1988 through August 1990.
The decree of divorce includes the following cost-of-living adjustment provision:
[U]pon the anniversary of the entry of this Decree, annually, the provisions for periodic child support shall be modified to reflect the changes, if any, in the cost of living by the following formula: (a) The periodic payment is equivalent to 100% of the cost of living index as published by the Bureau of Labor Statistics on the date of entry of this Final Decree; (b) If on the anniversary of this Final Decree such cost of living index is different from the index on the date of this Final Decree, the obligation of support for the next year shall be increased or decreased by the same percentage as the increase or decrease of the said cost of living index; (c) In no event will the support of the children go below the amount of periodic payments heretofore ordered and agreed upon in the Property-Settlement Agreement.
On March 7, 1988, a chancellor cited Don for contempt and noted that Don had been late in his child support payments "on many occasions." The court also ordered Don to fulfill his obligation to pay $6,836.13 as required by the provision for annual cost-of-living adjustment. The decree in the instant case, however, voided the cost-of-living provision of the 1983 decree. The chancellor characterized the provision as ambiguous and unenforceable. The chancellor explained:
[R]egardless, as to the wisdom of how it was done or why it was done, the court finds from the evidence that [the cost-of-living] provision is so ambiguous as applied in this case that it would be unenforceable; and therefore, the attempted adjustments required by that provision are unenforceable insofar as this proceeding is concerned since this matter has been debated and also since the legislature, as recent as April of this year, has determined that child support agreements should be based upon the adjusted gross income, or at least the adjusted gross income should be a rebuttable presumption as to the amount of child support due. So the court declares that that provision is unenforceable.
(T. 288-89). The chancellor fixed child support at the amount originally described in the 1983 decree, without the cost-of-living index provision.
In Wing v. Wing, 549 So.2d 944, 948 (Miss. 1989), the Court recommended practices to employ in formulating escalation clauses of support decrees:
(a) specify with certainty the particular cost of living or consumer price index which is to be utilized (there are many); (b) show the applicable ratio (present CPI is to ascertainable CPI as present award is to future award); (c) calculate the base figure as of the date of judgment; (d) establish frequency of adjustments (we suggest nothing less than yearly); and (e) establish an effective date for each adjustment (e.g., anniversary of date of judgment).
In Wing, the Court voided the cost-of-living provision because it did not sufficiently specify which index applied and did not take into account the father's ability to pay and the child's needs. Wing approved the case of Tedford v. Dempsey, 437 So.2d 410, 419 (Miss. 1983), in which the Court prescribed child support escalation provisions "tied to the parents' earnings or to the annual inflation rate or to some factored combination of the two." In Tedford, the Court recognized the case-by-case variation needed in order to fashion adequate and sufficient escalation clauses. 437 So.2d at 419. Despite the additional, statutory guidelines recommending that supported awards be tied to gross income, this Court has stressed the importance of support awards based on the needs in specific cases. Thurman v. Thurman, 559 So.2d 1014, 1017-18 (Miss. 1990).
*1197 The cost-of-living provision in the original decree in this action constitutes an unambiguous and enforceable provision. The chancellor correctly noted that a payor's gross income provides a rebuttable presumption for a support award basis. But the gross-income guideline serves only as a guideline, as Thurman states. It is not a hard-and-fast rule. Presumably, the chancellor who first heard the case balanced the support-award factors before fashioning a decree. In the instant case, the chancery court's citation of the provision's failure to incorporate gross income does not constitute sufficient evidence to warrant a decree modification. In fact, the cost-of-living provision does satisfy the Wing criteria, and in 1988, a chancellor had no problem enforcing the cost-of-living provision ordered in the original decree. The decree: (a) specifies a particular cost-of-living index; (b) specifies the ratio; (c) names the base figure of $1500 per month; (d) establishes a yearly adjustment and; (e) fixes the adjustment date as the judgment anniversary. In the voiding of the cost-of-living provision, this Court holds that there was manifest error by the chancellor and reverses and renders on this issue and reinstates the provision in the parties' agreement and in the court order. This case shall be remanded for the chancery court to compute the amounts owing since Don last fulfilled his obligations in this regard.
Furthermore, under Thurman v. Thurman, 559 So.2d 1014 (Miss. 1990) and prior cases, the chancellor did not have the power to modify those amounts already due and vested. See also Cumberland v. Cumberland, 564 So.2d 839, 847 (Miss. 1990) (support payments vest in child support at time of accrual and may not be modified or forgiven).

C. Attorney's Fee on Cross-Appeal
Regarding the issue of attorney's fees in this extended litigation, the Court finds no merit and affirms on the cross-appeal.
Other issues presented for review have been carefully studied, and this Court holds that they do not merit discussion or reversal.
ON DIRECT APPEAL, AFFIRMED IN PART; REVERSED, RENDERED AND REMANDED IN PART. ON CROSS-APPEAL, AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and SULLIVAN, PITTMAN, BANKS and McRAE, JJ., concur.