646 So.2d 1264 (1994)
Martin MORREALE
v.
Janice MORREALE.
Martin MORREALE
v.
Janice MORREALE (MARGIOTTA).
Nos. 90-CA-00702, 90-CA-01046.
Supreme Court of Mississippi.
March 31, 1994.
Opinion Granting and Denying Rehearing December 21, 1994.
*1265 Martin Morreale, pro se.
Jack Parsons, Parsons & Taylor, Wiggins, for appellee.
Before PRATHER, P.J., and BANKS and McRAE, JJ.
En Banc.
McRAE, Justice, for the Court:
This is a consolidated appeal from three judgments of the Hancock Chancery Court stemming from unpaid child support, house payments and other obligations entered on May 21, 1990, August 17, 1990, and September 5, 1990, against Martin Morreale [hereinafter referred to as "Martin"]. Thereafter, Martin appealed the three judgments awarded to his ex-wife Janice Margiotta [hereinafter referred to as "Janice"], and while Martin assigned ten issues as error, only five merit discussion. They are as follows:
I. Whether the chancery court's judgment of May 21, 1990, holding Martin in contempt for failing to pay child support and other obligations and awarding Janice a judgment for $82,119.86, was erroneous.
II. Whether the chancery court's judgment of May 21, 1990, voiding Martin's deed of future interests in certain real property to his mother and sister, was erroneous.
III. Whether the chancery court's judgment of August 17, 1990, ordering a Sheriff's sale of Martin's future interest in real property and ordering that proceeds from the sale, over and above amounts owed to Janice, should be withheld from Martin and kept in the registry of the court, was erroneous.
IV. Whether the chancery court's judgment of September 5, 1990, approving the Sheriff's report and confirming the Sheriff's Sale, without allowing Martin's attorney to object and without holding a hearing, was erroneous and a violation of Martin's right to due process of law.
V. Whether the total effect of all judgments taken together are oppressive, unreasonable and inequitable.
On cross-appeal, Janice raises the following issue:
VI. Whether the lower court erred in failing to grant attorney's fees to her in the May 21, 1990, judgment.
Finding no merit in Martin's appeals, but also finding that Janice is entitled to attorney fees, we affirm both direct appeals and reverse on cross-appeal and remand for a determination of attorney fees.
Four outstanding motions were reserved for ruling until this Court considered the case as a whole on the merits. Martin seeks to (1) supplement the record with the transcript of the bench conference held September 5, 1990, in which there was no transcript; (2) offer his then attorney's affidavit concerning the proceedings of September 5, 1990, into evidence; and (3) reconstruct the lower court's file in its entirety since the original file could not be found. Janice asks this Court to strike portions of Martin's brief which do not comply with Mississippi Supreme Court Rules 28(e) & 30(a).
*1266 All four motions are denied. Martin filed an affidavit from his attorney regarding the events of the September 5, 1990, proceedings. Martin, however, did not timely file the affidavit pursuant to Mississippi Supreme Court Rule 10(c) and was the last person to have had the missing file. There exists no transcript of the conference, and such an affidavit would have little probative value.

FACTS
Martin insists that Janice, with the assistance of the court, took the gold mine and left him the shaft. On May 21, 1990, the Hancock Chancery Court found Martin in contempt of court for failing to pay child support to Janice stemming from their 1987 divorce. The court found him to be in total arrearage of $82,119.86. This judgment also set aside Martin's deed of his future interest in two parcels of land granted to his mother and sister, finding it was given without consideration and fraudulent. The court held that the deed was conveyed with the obvious intent to prevent Janice from collecting any sums that may be due to her by Martin. The lower court cancelled the deed and held it for naught. Martin was joined in the appeal of the May 21, 1990, judgment by his mother and sister; however, they have withdrawn their appeal. On July 23, 1990, by special writ of execution the chancery court judge ordered Martin's interest in the two parcels of land located in Hancock County be sold by the Sheriff of Hancock County. On August 9, 1990, Janice filed a lis pendens notice to the Clerk of the Hancock Chancery Court.
Subsequently, on August 17, 1990, the Hancock County Chancery Court again found Martin in wilful contumacious contempt of court stating that he had good and valuable assets with which he could pay child support and awarded Janice $5,550.00 for delinquent child support and attorney fees. This constituted an additional judgment against Martin and was added to the earlier judgment of $82,119.86. The court also ordered that the proceeds from the sale of Martin's real property interest be placed in the registry of the Court as a cash bond for future child support and granted Janice a lien on the real property. On the same day, the sale was conducted, and Jacob Morreale, Martin's brother, purchased Martin's undivided interest in the parcels for $165,000.00.
On September 5, 1990, the Court entered its judgment approving and confirming the sheriff's execution sale and ordered that $90,520.46 be paid to Janice in satisfaction of the judgments with the remaining funds being placed in the registry of the court to pay future child support. Thereafter, Martin perfected his appeal for the judgments entered on August 17, 1990, and September 5, 1990. Martin has attempted to raise numerous issues which were adjudicated many years ago. Martin had previously filed a motion for reconsideration arguing he was totally unable to pay the amounts ordered in the judgment for child support, alimony and other expenses. The chancellor, however, found that although Martin did not have a job at the time of the divorce, he received seven hundred dollars a month from a rental unit and had a one-half future interest in several coast properties. No appeal was taken from the chancellor's denial of Martin's motion for reconsideration. The issues Martin presents pertaining to the earlier judgments are not addressed as they were not timely filed. The issues which were timely filed but not addressed by this Court were either presented with no authority or were never addressed.

STANDARD OF REVIEW
This Court will not disturb a chancellor's findings where there exists substantial evidence in the record to support his judgment. Omnibank of Mantee v. United Southern Bank, 607 So.2d 76, 82 (Miss. 1992). In Smith v. Smith, 545 So.2d 725 (Miss. 1989), this Court expounded:
Findings of fact made by a chancellor may not be set aside or disturbed on appeal unless manifestly wrong; this is so whether the finding relates to evidentiary or ultimate fact question ... With respect to issues of fact where the chancellor made no specific finding, this Court proceeds on the assumption that the chancellor resolved all such fact issues in favor of the *1267 appellee, or at least in a manner consistent with the decree.
Smith, 545 So.2d at 727. See Carr v. Carr, 480 So.2d 1120, 1122 (Miss. 1985); Tedford v. Dempsey, 437 So.2d 410, 417 (Miss. 1983). Issues of law presented to this Court, however, are provided de novo review. UHS-Qualicare v. Gulf Coast Community Hospital, 525 So.2d 746, 754 (Miss. 1987).

DISCUSSION OF LAW

I. Was the chancery court's judgment of May 21, 1990, holding Martin in contempt for failing to pay child support and other obligations and awarding Janice a judgment for $82,119.86, erroneous?
Once a plaintiff establishes an indebtedness, to avoid contempt, the defendant must show his "inability to pay the support ... or ... give a reasonable excuse for not doing so." Rhodes v. Rhodes, 420 So.2d 759, 760 (Miss. 1982). We have stated:
In such a posture, the defendant may avoid a judgment of contempt by establishing that he is without present ability to discharge his obligation. Ramsay v. Ramsay, 125 Miss. 185, 87 So. 491, 493 (1921). The defendant has the burden of proving his inability to pay. Redding v. Redding, 167 Miss. 780, 150 So. 776 (1933). Such a showing must be made with particularity and not in general terms. Hooker v. Hooker, 205 So.2d 276, 278 (Miss. 1967).
Clements v. Young, 481 So.2d 263, 271 (Miss. 1985). Martin claims that the amount for which the future interest was sold was far below the value of such interest as shown by the appraiser's testimony. The interest netted approximately $160,000.00 after all expenses were paid. Obviously, Martin did have the means with which to pay his indebtedness. He admitted to having the ability to pay; he simply choose not to pay. We have stated that "contempt matters are committed to the substantial discretion of the trial court which, by institutional circumstance and both temporal and visual proximity, is infinitely more competent to decide the matter than are we." Cumberland v. Cumberland, 564 So.2d 839, 845 (Miss. 1990). See Milam v. Milam, 509 So.2d 864, 866 (Miss. 1987); Walters v. Walters, 383 So.2d 827, 829 (Miss. 1980). Because no manifest error has been shown, the contempt charges entered on May 21, 1990, against Martin are affirmed.

II. Was the chancery court's judgment of May 21, 1990, voiding Martin's deed of future interests in certain real property to his mother and sister, erroneous?
The May 21, 1990, judgment set aside Martin's deed of August 5, 1987, which granted his future interest in two parcels of land to his mother and sister finding it was given without consideration and fraudulent. Parcel one as set out in the purported deed was executed by Martin and his sister, Patricia Garriga, and attempted to convey a life estate to their mother with the remainder interest being vested in Martin's sister. Parcel one was deeded to Martin and his sister by their mother on August 23, 1985, reserving unto the grantor a life estate. Parcel two described in the deed attempted to convey Martin's remainder one-half interest in which his mother also possessed a life estate to his sister. The court found that the deed of August 5, 1987, conveyed nothing to Martin's mother since she already possessed a life estate in both parcels of property. The court held that the deed was conveyed with the obvious intent to prevent Janice from collecting any sums due to her by Martin and cancelled the deed holding it for naught.
Both Martin and his sister, Patricia Garriga, testified that the reason he deeded the property back to his mother and sister was to pay back a continuing $60,000.00 debt he owed his family. Patricia Garriga stated that she had nothing to do with the granting of the deed and did not know the deed was drafted until after the fact. Martin admitted that he typed the deed himself but forged J.P. Compretta's "blue black deed cover" placing it with the deed to make it look as if Mr. Compretta, an attorney in Bay St. Louis, had prepared it. Martin testified that he forged the document to persuade his mother that the document was a will drafted by an attorney that she trusted [Mr. Compretta]. The testimony in this case is replete with Martin's prior financial history, which always resulted in "deals gone bad" and how he *1268 often manipulated his parents out of large amounts of money.
To invalidate fraudulent conveyances, Miss. Code Ann. § 15-3-3 (1972) was enacted to avert debtors from keeping property, accessible to payment of their debts, away from creditors. Barbee v. Pigott, 507 So.2d 77, 84 (Miss. 1987). Miss. Code Ann. § 15-3-3 states in pertinent part:
Every ... conveyance of lands, ... by writing . .. had or made and contrived of ... fraud, covin collusion, or guile, to the intent or purpose to delay, hinder, or defraud creditors of their just and lawful actions, suits, debts ... shall be deemed and taken only as against the person or persons, . .. and every of them whose debts, ... or interests by such guileful and covinous devices and practices shall or might be in any wise disturbed, hindered, delayed, or defrauded, to be clearly and utterly void; any pretense, color, feigned consideration, expressing of use, or any other matter or thing to the contrary notwithstanding.
Miss. Code Ann. § 15-3-3 (1972).
In the seminal case of Blount v. Blount, 231 Miss. 398, 95 So.2d 545 (1957), this Court addressed an attempt to circumvent a wife's suit for unpaid child support. In Blount, the husband conveyed all his real and personal properties to his father. Blount, 95 So.2d at 548. This left him with essentially no assets to satisfy the claims against him. His argument was to the same effect as Martin's in the case sub judice in that the properties were conveyed in order to cover antecedent debts. Id. at 549. We held that a fraudulent conveyance made with the exclusive purpose of cheating creditors is void whether backed by consideration or not. Id. at 553. See Barbee v. Pigott, 507 So.2d 77 (Miss. 1987). This Court additionally articulated:
The rule is well settled that, in a case of this kind, where it is claimed that a conveyance was made to satisfy or secure an antecedent indebtedness, there must be clear and convincing proof of the existence of a valid debt, including disclosure of details as to the items and amount of the debt, and it must clearly appear that the conveyance was in fact made in consideration of such debt. The necessity of clear and satisfactory proof of indebtedness particularly exists in the case of conveyances to near relatives, as in ... between parent and child.
* * * * * *
The burden of proof in this case was on the appellant to show by clear and satisfactory evidence not only a bona fide indebtedness, which was intended to be enforced, but also that the amount thereof was not materially less than the fair and reasonable value of the property conveyed to him.
Blount, 95 So.2d at 557-59. See Cobb v. Cobb, 485 So.2d 691, 694 (Miss. 1986); Morgan v. Sauls, 413 So.2d 370, 374 (Miss. 1982).
In order to ascertain whether, under the facts, actual fraud occurred, the trial court should analyze the presence of the `badges of fraud' to determine the issue of a bona fide conveyance. Southeast Bank v. I.P. Sarullo Ent., 555 So.2d 704, 708 (Miss. 1989); see also Barbee, 507 So.2d at 85; Reed v. Lavecchia, 187 Miss. 413, 193 So. 439, 441 (1940).
In Reed v. Lavecchia, 187 Miss. 413, 193 So. 439 (1940), we enumerated several `badges of fraud' regarding the issue of a bona fide conveyance:
[I]nadequacy of consideration, transaction not in usual course or mode of doing business, absolute conveyance as security, secrecy, insolvency of grantor, transfer of all his property, attempting to give evidence of fairness ... retention of possession, ... relationship of the parties, and transfer to person having no apparent use for the property.

Id. at 424-25, 193 So. at 441.
McNeil v. McNeil, 607 So.2d 1192, 1195 (Miss. 1992).
Martin admits that the selling price of $165,000.00 was far below the true value of his interests. However, Martin claims to owe his family $60,000.00. The $105,000.00 difference is indeed a material difference. There was no monetary consideration given in the case sub judice and the transfer of all Martin's property was made after his divorce was granted. Absent this future interest, *1269 Martin in effect was insolvent. There was no itemization or specific support by records or documentary evidence as to Martin's alleged previous debts. Moreover, the record shows no demand was made on Martin to pay back what he had allegedly obtained from his family estate. The transaction definitely was not made in the usual mode of doing business since Martin admits to drafting the document himself without informing his sister or mother until after the fact.
The chancellor, acting as finder of fact, found that there was clear and convincing evidence to show that a fraudulent conveyance had been made. We cannot say that this finding is without support. The chancellor is affirmed.

III. Was the chancery court's judgment of August 17, 1990, ordering a Sheriff's sale of Martin's future interest in real property, with the proceeds from the sale, over and above amounts owed to Janice being kept in the registry of the court, erroneous?
Martin never voluntarily paid Janice any amount pursuant to the previous court orders, but he maintains that there is no indication that he would squander or waste the amount that is being held in excess for future support. He argues this even though he confessed to entering bad business deals and fooling his mother into signing a document she thought was a will drafted by an attorney she trusted. In addition, the testimony from his sister, Patricia Garriga, revealed that Martin had a history of manipulating his parents for money and then frittering the money away. Taking all evidence into consideration, the chancellor was within his right to withhold the proceeds from the sale.
Martin offered no applicable authority whatsoever for his argument. He cites Todd v. Todd, 197 Miss. 819, 20 So.2d 827 (1945) as authority wherein a writ of execution directing a sale of land to secure a judgment was set aside. However, differing from the case at hand, the judgment itself was erroneous because "no adjudication was made by the court of the amounts in default." Todd, 20 So.2d at 830-31. Because an exact adjudication was made by the chancellor of the amount Martin was in default, this case has no bearing on our decision today.
Mississippi Code Ann. § 93-5-23 (1972) provides in part:
When a divorce shall be decreed from the bonds of matrimony, the court may, in its discretion, having regard to the circumstances of the parties and the nature of the case, as may seem equitable and just, make all orders touching the care, custody and maintenance of the children of the marriage, and also touching the maintenance and alimony of the wife, . .. and may, if need be, require sureties for the payment of the sum so allowed.
Miss. Code Ann. § 93-5-23 (1972) (emphasis added). Based on the past history of Martin, the lower court was correct in ordering the funds held in the registry of the court so that they might benefit the Morreale children since Martin has done very, very little to assist them voluntarily.

IV. Was the chancery court's judgment of September 5, 1990, approving the Sheriff's report and confirming the Sheriff's Sale, without allowing Martin's attorney to object and without holding a hearing, erroneous and a violation of Martin's right to due process of law?
Martin contends that his attorney was not allowed to object at the September 5, 1990, hearing which approved and confirmed the sheriff's report. He also argues that the chancellor refused to hear any testimony, evidence, argument, or even any statement by his attorney or him. Pursuant to Miss. Code Ann. § 11-5-103 (1972), which states that "the Court shall proceed to make a decree confirming the sale, unless good reason be shown to the contrary", Martin claims that a party has a right to object and be heard. In addition, he argues that the chancellor failed to make any findings of fact according to Miss.R.Civ.P. 52(a) which provides that "[i]n all actions tried upon the facts without a jury the court may, and shall upon the request of any party to the suit or when required by these rules, find the facts specially and state separately its conclusions of law thereon and judgment shall be entered accordingly."
*1270 To the contrary, Martin offered no testimony, evidence, argument or statement, and, in fact, when asked if there was any testimony or evidence to be presented, he responded with a negative reply. Martin did have a right to file an objection to the confirmation proceeding had he so desired. However, there was no objection filed with the court. Neither party asked that the chancellor make its findings of fact and conclusions of law separately, and, accordingly, Martin should not now be heard to complain of their absence. The only authority Martin presents is Tricon Metals & Services, Inc. v. Topp, 516 So.2d 236 (Miss. 1987), wherein we remanded a case to the chancery court to make findings of fact separately from its conclusions of law. However, this case is misplaced as authority for Martin because we said:
[I]n cases of any complexity, tried upon the facts without a jury, the Court generally should find the facts specially and state its conclusions of law thereon.
As in other areas, we will not interfere with a trial court's exercise of its discretion unless that discretion be abused. Where, however, a case is hotly contested and the facts greatly in dispute and where there is any complexity involved therein, failure to make findings of ultimate fact and conclusions of law will generally be regarded as an abuse of discretion.
Tricon Metals & Services, Inc., 516 So.2d at 239. The contempt case pending before the lower court was simple, and there was no need for special findings of facts and conclusions of law in the absence of request by either party. Since there was no such request made, there is no error.
Martin also claims that the alleged refusal by the chancellor to let him object to the sale, testify and offer evidence violated due process of law. He relies on Weeks v. Weeks, 556 So.2d 348 (Miss. 1990), wherein we held that a party was denied due process of law when the chancellor refused to let him present witnesses' testimony in a motion for a new trial hearing. Weeks, 556 So.2d at 349. In Weeks, the ex-husband attempted to show, through his testimony and others, that he had paid his ex-wife the money she alleged he owed her. Id. The chancellor refused the ex-husband's proof stating he was satisfied that he was in contempt. Id. We reversed and remanded that case "because the record discloses that there were important, material, and pertinent facts and available witnesses which should have been heard." Id.
Every defendant has a right to introduce evidence at a hearing. Edwards v. James, 453 So.2d 684, 686 (Miss. 1984). See Fortenberry v. Fortenberry, 338 So.2d 806, 807 (Miss. 1976). However, in the instant case, Martin had no witnesses standing ready to testify, no evidence, and no new or pertinent facts to place before the court. Had he objected to the confirmation of the Sheriff's sale and offered proof of evidence that was to be presented, a different outcome might result, but there is no error to complain of in the chancellor's confirmation.

V. Was the total effect of all judgments taken together oppressive, unreasonable and inequitable?
"The principle is elementary that an award of alimony and child support is a matter within the discretion of the Chancellor and that this appellate court will not reverse unless the Chancellor was manifestly in error in his finding of fact and manifestly abused his discretion." Powers v. Powers, 568 So.2d 255, 258 (Miss. 1990). See Gregg v. Montgomery, 587 So.2d 928, 931 (Miss. 1991); Massey v. Massey, 475 So.2d 802, 803 (Miss. 1985); Hopton v. Hopton, 342 So.2d 1298, 1300 (Miss. 1977). Along the same lines this Court has explained that "the process of weighing evidence and arriving at an award of child support is essentially an exercise in fact-finding. Our review, therefore, is significantly constrained." Cupit v. Cupit, 559 So.2d 1035, 1036-37 (Miss. 1990). The chancellor found Martin had ample assets with which he could have complied with the court's previous orders and, in fact, told Martin, "you can't pick and choose assets ... [i]f assets are available, they are available."
Much of Martin's argument involves court action taken in the original divorce decree. Martin could have appealed the original divorce decree after his motion for reconsideration was adjudicated, but he did not. Instead, *1271 he did absolutely nothing and ignored all court orders. No detriment to Martin has occurred since the original decrees to establish material changes in which a modification might be granted. Martin claims that a great injustice has been purported upon him and that although he could have made the payments, it would be manifestly unjust. With our limited standard of review and the fact that Martin did indeed have valuable assets but just did not pay, no error exists.

VI. Was the lower court in error by failing to grant attorney's fees to Janice in the May 21, 1990 judgment?
On cross-appeal, Janice alleges that the chancellor was in error in failing to award her attorney fees in its judgment of May 21, 1990. Since the chancellor found Martin to be in willful contempt, attorney fees should have been assessed. Martin totally ignored the orders and judgments of the chancery court, thus, requiring Janice to initiate further proceedings. In Dillon v. Dillon, 498 So.2d 328, 331 (Miss. 1986), we stated:
Under § 93-5-23, Miss. Code Ann. (Supp. 1979), chancellors are extended broad discretionary authority to make all orders touching the maintenance and alimony of a wife in a divorce proceeding. The scope of this statute is broad and includes granting chancellors the authority to award attorneys fees in divorce proceedings. This Court has held on numerous occasions that a question concerning attorneys fees is largely a matter entrusted to the sound discretion of the trial court. Kergosien v. Kergosien, 471 So.2d 1206, 1212 (Miss. 1985). Unless the chancellor abuses his discretion in such matters, his decision as to whether or not to award attorneys fees will generally be upheld. Ladner v. Ladner, 436 So.2d 1366, 1375 (Miss. 1983).
Dillon, 498 So.2d at 331.
In O'Neill v. O'Neill, 501 So.2d 1117, 1119 (Miss. 1987), we upheld an award of attorney fees to the appellee where evidence existed that the extensive litigation involved was initiated by the appellant although the appellant was unwilling to settle the matters. O'Neill, 501 So.2d at 1119. It is apparent from the record that Martin has inflicted substantial injury, both monetary and otherwise, on his ex-wife and children by evading and ignoring the many prior judgments ordering him to provide support and our judicial system as well by consuming the court's valuable time and resources.
Accordingly, we find that the chancellor abused his discretion in not awarding Janice attorney fees.
The lower court's judgments are affirmed on direct appeal, but reversed and remanded for a determination of attorney fees.
AFFIRMED ON DIRECT APPEALS; REVERSED AND REMANDED ON CROSS-APPEAL.
HAWKINS, C.J., PRATHER, P.J., and SULLIVAN, PITTMAN, BANKS, JAMES L. ROBERTS, Jr. and SMITH, JJ., concur.
DAN M. LEE, P.J., concurs except to the cross-appeal on attorney fees.

ON PETITION FOR REHEARING

[Filed December 21, 1994]
BANKS, Justice, for the Court:
This matter is before the court on petition for rehearing. We find the petition not well-taken and deny it in all respects, except one. We modify our disposition of the attorney's fee issue.
Martin Morreale, who has handled proceedings in this Court pro se, suggests that we erred in remanding for assessment of attorney's fees in connection with the May 21, 1990, judgment. He contends that attorneys' fees were awarded for that work in the August 17, 1990, judgment. He refers us to the record where, in a colloquy with the court, Janice's attorney responds with reference to the import of a $1,500 award of partial attorney's fees just announced by the court to the effect that this award brought Janice "up to date" on attorney's fees. Janice says nothing in her response to the petition for rehearing to address that statement.
*1272 It appears that in the August 17 hearing, counsel for Janice produced his "Statement" detailing fees charged to her from December 15, 1989. The total fees indicated there were $4,485 and expenses of $611, including a $100 filing fee for the cross-appeal to this court. Costs for recording and copying the judgment, $11, and $500 for an appraisal were also listed. Of the fees $2,697.50 were before March 20, the date of the hearing from which the May 21, 1990, judgment came, and $1,787.50 were after that date, including work on preparation of the first judgment ($255) and work on the execution of it, ($75).
Significantly, despite the fact that there was a request for attorney's fees in the complaint which engendered the May 21, 1990, judgment, this is the first itemization of attorney's fees that occurs. Moreover, except for the August 17 hearing, the record does not reflect that attorney's fees were mentioned after the complaint until the filing of the cross-appeal. Attorney's fees are not specifically denied in the May 21, 1990, judgment, which was prepared by Janice's attorney. The issue is simply not mentioned. Nor is it mentioned in the preceding opinion of May 7, 1990. No motion to alter or amend the judgment was filed. Thus, it appears that the trial court never had an opportunity to consider the matter of attorney's fees with respect to a specific amount requested, prior to August 17.
In the August 17, 1990, hearing, counsel for Janice produced the statement alluded to above and drew a line after March 20, 1990. It is unclear whether the chancellor considered the charges enumerated there which occurred prior to that date. What is clear is that the chancellor expressly stated that he did not intend to award all that Janice owed, that his award of $1,500 was a partial award of fees. During this colloquy, Parsons, Janice's attorney, made the statement, "That settled everything up to date on attorney's fees."
Janice may be deemed to have waived her request for attorney's fees by her failure to have presented the matter to the court in a timely and appropriate manner. While we have intimated in dicta that a request for attorney's fees is governed by Miss.R.Civ.P. 60(b), Bruce v. Bruce, 587 So.2d 898 (Miss. 1991), the federal authority there relied upon has been distinguished by other federal decisions. See, White v. New Hampshire Dept. of Employment Security, 455 U.S. 445, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982); Contrast, Holmes v. J. Ray McDermott & Co., 682 F.2d 1143, 1146 (5th Cir.1982). In White the court held that applications for attorney's fees as a part of costs pursuant to civil rights statutes were not governed by Rule 59(e), Federal Rules of Civil Procedure. The Holmes court distinguished White when the fees involved were a part of relief on the merits. For purposes of finality of judgment, the United States Supreme Court put the matter to rest in Budinich v. Becton Dickinson & Co., 486 U.S. 196, 108 S.Ct. 1717, 100 L.Ed.2d 178 (1988). There it held that for purposes of "operational consistency and predictability in the overall application," a uniform rule was preferable. Id. at 202, 108 S.Ct. at 1722.
While, for finality purposes, the matter is settled, our Uniform Local District Court Rules continue to dictate a different time table for attorney's fee motions "as a part of costs" and those sought as "substantive relief," requiring that the former be served within 30 days of judgment, and the latter within the ten days provided for motions under Rule 59(e). Rule 15(b)(1) and (2), Uniform Local Rules of the United States District Courts for the Northern and Southern Districts of Mississippi.
We have no similar state rule regarding presentation of motions for attorney's fees and we have not addressed the question whether attorney's fees in this context would be considered a part of relief on the merits, and if so, whether Rule 59 would apply. Instructive, however, is Russell v. Lewis Grocer Co., 552 So.2d 113 (Miss. 1989), where we held that sanctions under Rule 11 were barred because application was not made within the ten days required in Miss.R.Civ.P. 59(e).
Leaving the procedural issue aside, we are compelled to observe that the colloquy surrounding the award of attorney's fees on August 17 may be interpreted to deem that award responsive to the entire question of *1273 attorney's fees to that date. There was no cross-appeal of that order.
For the foregoing reasons, that portion of the original opinion finding an abuse of discretion in the failure to have awarded fees in the May 21, 1990, judgment is withdrawn. To the extent that the failure to award attorney's fees in the May 21 order was an oversight not cured by the August 17 award, we remand the matter to the chancery court for further proceedings, in accordance with the rules of civil procedure. Questions concerning waiver, timeliness and the like may be considered by that court, as well as, the merits of the claim for fees and the effect of the August 17 order, if necessary.
PETITION FOR REHEARING DENIED IN PART, GRANTED IN PART. THE JUDGMENT OF THE CHANCERY COURT IS AFFIRMED ON DIRECT APPEAL AND REMANDED FOR FURTHER PROCEEDINGS ON CROSS APPEAL.
HAWKINS, C.J., PRATHER, P.J., and SULLIVAN, PITTMAN, JAMES L. ROBERTS, Jr. and SMITH, JJ., concur.
McRAE, J., concurs in result only.
DAN M. LEE, P.J., dissents.

[Filed December 21, 1994]
DAN M. LEE, Presiding Justice, concurring in part, dissenting in part:
I concur with the majority's opinion except for that part in which this Court affirms the lower court's decision to hold Martin Morreale's money in the registry of the chancery court. In the case sub judice, I am afraid that this Court is falling into the trap of allowing bad facts to make bad law. Thus, I concur in part and respectfully dissent in part.
Martin Morreale's past as a parent is checkered at best and he certainly is not likely to win father of the year honors anytime soon. However, I cannot concur with the majority's decision to allow the lower court to hold money that legally belongs to Martin Morreale in the court registry so that it can be assured that Martin will pay his future child support obligations without complying with statutory prerequisites.
On May 21, 1990, the Hancock Chancery Court found Martin in contempt of court for failing to pay his child support obligations and determined that Martin had failed to pay his wife $82,119.86 for past due child support payments. On July 23, 1990, by special writ of execution, the chancellor ordered Martin's interest in two parcels of land located in Hancock County to be sold by the Sheriff of Hancock County. Martin's wife filed a lis pendens notice with the Hancock County Chancery Court on August 9, 1990. On August 17, 1990, the chancellor again found Martin in contempt of court and awarded his wife $5,500 for delinquent child support payments and attorney fees and added this amount to the earlier judgment of $82,119.86. On the same day, the sale of Martin's real property interest was conducted, and Martin's undivided interest was purchased for $165,000. On September 5, 1990, the chancery court entered its judgment approving and confirming the sheriff's execution sale and ordered that $90,520.46 be paid to Martin's ex-wife in satisfaction of the judgments and further ordered that the remaining funds (over $74,000) be placed in the registry of the court to assure the payment of Martin's future support obligations.
This Court has addressed a parent's obligation to pay child support payments and stated: "[i]n Mississippi judicial interpretation of this legal duty to support minor children has firmly established that, once ordered, installment of child support becomes fixed and vested when due and unpaid." Hailey v. Holden, 457 So.2d 947, 951 (Miss. 1984) (emphasis added). Notwithstanding the previous statement, and based upon Martin's past behavior, the majority would allow the lower court to take money that legally belongs to Martin and hold it in the registry of the chancery court to satisfy child support payments that are not yet due to Martin's children.
Importantly, the majority opinion fails to address several key issues in allowing the lower court to seize Martin's money and deposit it in the registry of the court. For example, the majority does not address *1274 whether Martin is to be paid interest on his money. "The use of one's money by another has value in economic theory and in fact. In our society this use frequently is compensated by the charging of interest, such charges being imposed variously under authority of public and private made law." Brand v. Brand, 482 So.2d 236, 238 (Miss. 1986). Not only does the chancellor's action deprive Martin of access to his money, but also of any interest that he might earn on said money. Martin's past failure to pay his child support obligations, while indefensible, certainly should not warrant the actions taken here by the lower court. The lower court's action is a sanction that goes far beyond the permissible limits of Miss. Code Ann. § 93-5-23 (1972).
The chancellor's seizure of Martin's money, approved of in the majority opinion, is analogous to a practice that the United States Supreme Court in Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), found to be unconstitutional. In Sniadach, the United States Supreme Court held unconstitutional a Wisconsin statute permitting garnishment before a judgment had been obtained against the principal debtor. The Sniadach Court held that Wisconsin's prejudgment garnishment statute violated the petitioner's right to due process under the Fourteenth Amendment of the United States Constitution. In the case at bar, the majority allows the lower court, without notice and a prior hearing, to take Martin's property (his money and interest therefrom) and hold it on the chance that Martin will fail to satisfy future child support obligations that have yet to become due and vested. As was the petitioner in Sniadach, Martin is being deprived of the enjoyment of his money without notice or an opportunity to be heard. Martin is current on his child support payments with the sale of his property and any attempt by the lower court to seize his money and have the registry of the court hold his money is just as constitutionally infirm as the Wisconsin statute that allowed a creditor to garnish a debtor's wages before obtaining a judgment against the debtor.
Likewise, the majority opinion does not address whether Martin is entitled to an accounting of his funds nor does the majority appear to be concerned with if or how the chancery court will disburse Martin's funds. It would certainly seem logical that Martin should be entitled to procedural protections that would prevent the disposition of his money without first giving him an opportunity to challenge the court's dispersal of his money.
Instead of requiring that Martin's money be deposited into the court registry, the chancellor should have required Martin to post a bond with the court which would insure that he would make future child support payments. Miss. Code Ann. § 93-11-65 (1972) entitled "Custody and support of minor children; additional remedies" provides in part:
In addition to the right to proceed under Section 93-5-23, Mississippi Code of 1972, and in addition to the remedy of habeas corpus in proper cases, and other existing remedies, the chancery court of the proper county shall have jurisdiction to entertain suits for the custody, care, support and maintenance of minor children and to hear and determine all such matters, and shall, if need be, require bond, sureties or other guarantee to secure any order for periodic payments for the maintenance or support of a child.
Under the specific facts of this case it may be easy for the majority to condone the lower court's extra-judicial remedy; however, the likelihood for abuse is ever present and this Court should not make bad law by allowing the bad facts of this case to shade our judgment. Accordingly, I concur with the majority's opinion except that I respectfully dissent to that part in which this Court would allow the lower court to take Martin's money prior to his future child support obligations becoming due and vested.